## BOSTON AND MAINE RAILROAD *vs*. JAMES W. SMALL.

### York.   Opinion May 31, 1893.

*Officer.   Warrant.   Defective Service.   Forfeiture of Protection.   R. S.,*
*c. 27, § 40.*

If an officer serving a search warrant under R. S., c. 27, § 40, (commonly called the search and seizure statute,) omits to seize the intoxicating liquors he finds upon the premises described in his warrant, he forfeits the protection of his warrant, and is liable for any injury done by him to person or property while undertaking to execute such warrant.

ON REPORT.

This was an action of trespass in which the plaintiff claimed damages of the defendant, a deputy sheriff, for breaking and entering one of its freight cars on November 7, 1891, at Biddeford, by destroying the lock and seal and a portion of the door; and having entered with a search warrant against certain intoxicating liquors, alleged to be in the car, bored a hole in a barrel of alchohol found therein, seized nothing, and returned upon the warrant that he found no liquors.

The facts appear in the opinion.

*George C. Yeaton*, for plaintiff.

Warrant insufficient : It contained no direction to search any car while in transit.   Such warrant not within *Elsemore* v. *Longfellow*, 76 Maine, 128, and *Small* v. *Orne*, 79 Maine, 78. It is framed upon R. S., c. 27, § 40, when it should have been upon § 31, as finally amended by Stat. 1891, c. 132.   *State* v. *Roach*, 74 Maine, 562.

Transit not ended : 2 Benj. Sales (Corbin's 4th Am. Ed.), § 1246, note 12 ; *Tufts* v. *Sylvester*, 79 Maine, 213 ; *Allen* v. *M. C. R. R. Id.* 327 ; *Thomas* v. *B. & P. R. R. Corp.* 10 Met. 472, 477 ; *Norway Plains Co.* v. *B. & M. R. R.* 1 Gray, 263, 270 ; *Sessions* v. *West R. R. Corp.* 16 Gray, 132, 134 ; *Rice* v. *B. & W. R. R. Corp.* 98 Mass. 212 ; *Barron* v. *Eldredge*, 100 Mass. 455 ; *Bickford* v. *Metrop. Steam Co.* 109 Mass. 151 ; *Stowe* v. *N. Y. & P. R. R. Co.* 113 Mass. 521 ; *Rice* v. *Hunt*, 118 Mass. 201 ; *Bassett* v. *Conn. River R. R.* 145 Mass. 129.

Deering Neg. § 60, and note; 2 Beach R. R. § § 915, 924, 937, and notes; *Benson* v. *Gray*, 154 Mass. 391, 394.

Interstate commerce: No "arrival" within act of Congress, August 8, 1890, c. 728.  *In re Spickler*, 43 Fed. Rep. 653; *In re Van Vliet, Id.* 761; *In re Rahrer*, 140 U. S. 545.  Transit continues until delivery.  *O'Neil* v. *Vermont*, 144 U. S. 323, 352.

*James O. Bradbury* and *Samuel W. Luques*, for defendant.

Officers should have reasonable protection: *State* v. *McNally*, 34 Maine, 220; *Sandford* v. *Nichols*, 13 Mass. 286.  Warrant protects: *Nowell* v. *Tripp*, 61 Maine, 428; *Savacool* v. *Boughton*, 5 Wend. 170; *Earl* v. *Camp*, 16 Wend. 562; *Gray* v. *Kimball*, 42 Maine, 307; *Warren* v. *Kelley*, 80 Maine, 512; *Carle* v. *Delesdernier*, 13 Maine, 365; *Chase* v. *Fish*, 16 Maine, 132.  Liquors had arrived at Biddeford and subject to laws of this State: Act of Congress, August 8, 1890, c. 728; *State* v. *Intox. Liquors*, 50 Maine, 506, 513; 69 Maine, 524; *State* v. *Cobaugh*, 78 Maine, 403.

EMERY, J.  The plaintiff corporation as a common carrier, had in its possession on one of its side tracks, in Biddeford, a box freight car laden with merchandise for various parties, and locked and sealed.  While the car was in this situation and condition, the defendant, a deputy sheriff for York county, armed with a search warrant from the Biddeford municipal court under R. S., c. 27, § 40, broke the lock and door, and entered the car in the night time, soon after midnight.  His warrant commanded him to "therein search for intoxicating liquors, and if there found to seize and safely keep the same with the vessels in which they are contained, until final action and decision be had thereon."  He did find in the car one barrel of intoxicating liquor,— viz: a barrel of alcohol,— but did not seize it, being of the opinion that it was not intended for unlawful sale. He, however, made upon the warrant the erroneous return that he searched the car and found no intoxicating liquor.  The plaintiff thereupon brought this action of trespass for the breaking into its car through the lock and door.  The defendant has pleaded a justification under the warrant above described.

Assuming the complaint and warrant and the search under them to have been in other respects legal and regular, the question arises whether the intentional omission " to seize and safely keep," &c., the intoxicating liquors found in the car by the officer invalidates his authority under the warrant and leaves him a trespasser.

Though often obscured in earlier and ruder times, it is a distinctive feature of our common law system of jurisprudence that it so jealously guards the liberty and property of the citizen against the capricious, arbitrary or extra legal acts of government officers, and at the same time insists upon the full performance of their legal duty. English history abounds with instances of the assertion of this principle. Two conspicuous instances are the beheading of one king for over-stepping the law, and the expulsion, some fifty years later, of another king partly for refusing to execute certain laws. The principle is now imbedded in the fundamental law of our republics.

Imbued with this spirit, our law requires of every ministerial officer assuming to execute a statute or legal process against the person or property of the citizen, a strict observance of every provision of the statute and of every lawful command in the process. The law permits to such an officer no discretion in this respect. If he once begin, he must execute the process, the whole process, and nothing but the process. Many extracts from judicial opinions could be quoted stating this rule as strongly and comprehensively. One distinguished jurist has used judicially the following language : "A man who seizes the property or arrests the person of another by legal process, or other equivalent authority conferred upon him by law, can only justify himself by a strict compliance with the requirements of such process or authority. If he fails to execute or return the process as thereby required, he may not perhaps in the strictest sense be said to become a trespasser *ab initio* ; but he is often called such, for his whole justification fails, and he stands as if he never had any authority to take the property, and therefore appears to have been a trespasser from the beginning." Gray,

J., in *Brock* v. *Stimson*, 108 Mass. 521. By substituting the word "injure" for the word "seize" in the above quotation the language of Justice Gray would be literally applicable to this case.

There would seem to be no difference in principle between civil and criminal processes in this respect, and hence illustrations may properly be taken from either class of cases. In *Blanchard* v. *Dow*, 32 Maine, 557, a tax collector regularly sold cattle of the plaintiff upon a tax warrant. He omitted afterward to render "an account in writing of the sale and charges" as required by the statute and his warrant. It was held that this omission deprived him of the protection of his warrant. In *Carter* v. *Allen*, 59 Maine, 296, a tax collector under the same circumstances did render the account in writing and tender the surplus; but the statement of account proved to be incorrect. It was held that this error vitiated the officer's immunity. In *Ross* v. *Philbrick*, 39 Maine, 29; *Brackett* v. *Vining*, 49 Maine, 356; and *Smith* v. *Gates*, 21 Pick. 55, it was held that an omission by an officer to execute a command in the precept at the precise time named therein, invalidated his authority and made him liable as a trespasser to those with whose property he had interfered under his precept. In the last named case, *Smith* v. *Gates*, there was a variation of only twenty minutes. In *Tubbs* v. *Tukey*, 3 Cush. 438, an officer arrested the plaintiff on a criminal process on Sunday, and committed him to jail. On the following Monday morning instead of taking the plaintiff before the police court, as required by law to do, the officer assumed to discharge the plaintiff from arrest. It was held that the omission to take the plaintiff before the court took away from the officer all justification for the arrest. In *Russell* v. *Hanscomb*, 15 Gray, 166, a fish warden as authorized by statute took a seine which was illegally set. He did not, however, as required by statute begin a legal proceeding for the forfeiture. In the words of Shaw, C. J., the court held that the warden's "failure to prosecute was a departure from his authority, and in legal effect deprived him of his justifica-

tion." In *Brock* v. *Stimson*, 108 Mass. 520, a police officer by authority of a statute arrested the plaintiff for being drunk and disorderly in a public place; but instead of taking him before the court for trial, as further required by statute, he released the plaintiff from arrest as soon as he recovered from his intoxication. It was held that this disobedience of the statute took away all protection under the statute. In *Phillips* v. *Fadden*, 125 Mass. 198, upon a similar state of facts the proposition was again asserted that, if an officer fails to do all that the law requires him to do, his whole justification fails. It has also been held and is a familiar principle, that the omission by the officer to obey the final and formal command to make return of the precept, under which he assumes to act, invalidates his authority under the precept, and renders him liable to an action for anything done under it. *Williams* v. *Babbitt*, 14 Gray, 141; *Williams* v. *Ives*, 25 Conn. 568; *Dehm* v. *Hinman*, 56 Conn. 320.

In the *Six Carpenters' case*, 8 Coke, 146, in which the doctrine of trespass *ab initio* seems to have been first formally expounded, it was said that the reason for holding a person acting under authority of law to be a trespasser *ab initio* by any subsequent abuse of such authority, was that his subsequent illegality showed that he began with an unlawful intent. This dictum has been often repeated in various forms. It seems, however, to be artificial and even fictitious. An officer may often, in fact, begin with the best and most lawful intent and yet forfeit his protection by subsequent misconduct. The more solid and sure foundation for such a rule would seem to be public policy. It is inconsistent with both private security and public order, that ministerial officers should assume to determine for themselves how far and in what manner, they will enforce a statute or execute a process. If the safety of the citizen requires that such officers shall do no act not authorized, the safety of the people equally requires that such officers shall omit no act that is commanded.

It was further resolved in the *Six Carpenters' case* that "not doing cannot make the party who has authority or license by law,

a trespasser *ab initio*, because not doing is no trespass." This dictum also has been often repeated, and has at times influenced judicial decisions. The reasoning may seem plausible, but in reality it is a bit of sterile, verbal syllogization. It has borne no good fruit.

It is difficult to see any difference in principle between misfeasance and non-feasance in a ministerial officer. In either case he is forsworn; has disobeyed the statute or process he has sworn to execute faithfully. It is the disobedience, not the act, that deprives him of his authority. The disobedience is the fatal poison which paralyzes the protecting arm of the law; and this disobedience can come as well from acts of omission, as commission.

The learned editor of the American Decisions in the notes to *Barrett* v. *White*, 3 N. H. 210, S. C. 14 Am. Dec. 365, criticizes this dictum of the *Six Carpenters'* case. He says the distinction seems to be merely artificial, and should not be allowed to protect a disobedient officer. He cites many cases in which (he says) the distinction has been practically disregarded. Reference is made to those notes and citations without further quotations from them here.

The courts of Maine and Massachusetts, while sometimes alluding to or quoting this dictum, have practically ignored it when dealing with cases like this one before us. Every case above cited from the decisions of those courts were cases of non-feasance, or omission. The tax collector simply omitted to do some particular thing either entirely or at the specified time. The police officers simply omitted to do some act required. The failure to make return of the process is a simple omission. The New Hampshire court seems to uphold the distinction drawn in the *Six Carpenters'* case, for in *Ordway* v. *Ferrin*, 3 N. H. 69, it held precisely the contrary of our decision in *Brackett* v. *Vining*, 49 Maine, 356. Our stricter rule is firmly established in our law, and we think upon grounds of public policy it is the better and more reasonable rule. While, of course, in a given case an officer may have a sufficient, lawful excuse for his omission, the general, plain, reasonable and

necessary proposition is, that a ministerial officer must faithfully obey every lawful command in the statute or process, or he will be left without its protection in any suit against him for any acts done by him under color of such statute or process. The case of *Hinks* v. *Hinks*, 46 Maine 423, in no way conflicts with this proposition, for there the defendent was not an officer, and was only exercising a private right.

Recurring now to the case before us, it is evident that the principal purpose of the statute R. S., c. 27, § 40, and of the process issued under it, was the seizure of whatever intoxicating liquors were found and the bringing them before the court for determination whether they were intended for unlawful sale. The authority to enter the car and there search was given for that express purpose. The defendant officer exercised the authority to search, but he wilfully and deliberately refused to seize the intoxicating liquors he found, and made a false return that he found none. He assumed to nullify the main command of the statute and of his process. He wilfully defeated the very purpose of the search he assumed to make. Such a flagrant disobedience should, and we think does, destroy the protection he might otherwise have justly enjoyed.

The good faith of the defendant, his strong belief that the intoxicating liquor he found was not intended for unlawful sale, is no excuse and does not mitigate the penalty. As said in *Guptill* v. *Richardson*, 62 Maine, 262, the fact, " that it [the liquor] was not liable to forfeiture would not excuse the officer for disobedience to his precept." The command to seize the liquors was plain. His duty was plain. He was given no discretion ; no power to determine what intoxicating liquors he would, or would not seize. He should not have arrogated to himself any such power.

It is urged that it may at times work a great hardship upon an innocent owner, if an officer must in every case seize whatever intoxicating liquors he finds under a search warrant, however evident it is they are not intended for unlawful sale. The policy of the law is that every owner or keeper of intoxicating liquor shall be prepared to defend them, before the courts, and

not before the officer, against the accusation that they are intended for unlawful sale. The convenience of such owner or keeper must give way to the good of the people, and to their undoubted right to protect themselves in this way against the consequences of the traffic in such articles. At any rate the officer must obey the law and his lawful process.

It is urged that the omission to seize the liquors in this case caused this plaintiff no special injury, however much the public may have been harmed. The search however did the plaintiff an injury. The lock and door of its car were broken by the defendant. He might have made that breaking official and lawful by doing his whole official duty. He saw fit, however, to disregard his precept and abandon his duty. This abandonment of duty was also an abandonment of his authority, and left him amenable for all the damage done by him to the plaintiff corporation.

*Defendant defaulted. Damages assessed at ten dollars.*
WALTON, LIBBEY, FOSTER and WHITEHOUSE, JJ., concurred.
PETERS, C. J., did not sit.