## SANDERS *et al.* v. CLINE.

No. 653, Ind. T.   Opinion Filed September 12, 1908.

Rehearing Denied April 13, 1909.

(101 Pac. 267.)

1.	**LANDLORD AND TENANT—Wrongful Dispossession—Liability on Bond.** A petition, in an action for damages for trespass, does not state a cause of action against a surety on the official bond of an officer charged with its commission, nor against the sureties of a defendant therein, who was plaintiff in a forcible entry and detainer action out of which grew the alleged trespass, where it fails to allege that such sureties contributed thereto either as actors, ·directors, requesters, aiders, or abettors, or who after its commission assumed the benefit of it.

2.	**UNITED STATES MARSHALS—Liability for Act of Deputy.** A petition, which sets out the possession of A. of a tract of land located in section 18 on which he was living with his family under a contract with B., and that C. filed an action in forcible entry and detainer against A. for possession of land situated in section 7 only, and a writ of possession describing land in said section 7 is issued and placed in the hands of D., a United States marshal, and executed by his deputy E., and that said officer, acting under the guise of this writ, forcibly, unlawfully, and maliciously evicted defendant and his family from his residence on section 18, states a cause of action as to all of such parties.

3.	**LANDLORD AND TENANT—Wrongful Dispossession—Actions for Damages—Evidence—Admissibility.** The reception of evidence showing that at the time of such eviction the weather was disagreeable and cold, and that the aged mother of plaintiff, who was living with him, died two weeks thereafter by reason of the exposure to which she was subjected, is not error, where the court instructs the jury that they could not take into consid-

eration, in assessing either the actual or exemplary damages, any damages which accrued to the other members of plaintiff's family by their wrongful ejectment.

4.    SAME—Judgment—Conclusiveness—Judgment in Unlawful Detainer.  It is not error, in such a case, for the court to refuse to instruct the jury that the judgment in the forcible entry and detainer case was conclusive and binding upon the plaintiff as to defendants' right to sue out said order of possession.

5.    SAME—Wrongful Dispossession—Actions for Damages—Instructions.  Where the writ under which the officer acted contained no description of the property from which plaintiff was evicted, it was not error to instruct the jury that, before the officer could dispossess the plaintiff, he (the plaintiff) must have notice served upon him, for the reason that there could be no justification under such writ, and such instruction did not make plaintiff's recovery more easy before the jury.

6.    TRIAL—Requested Instructions—Correct in Entirety.  To entitle a party to have a requested instruction given, it must be correct as an entirety; and, where it is not so, and the court refuses it, there is no error.

(Syllabus by the Court.)

Williams. C. J., and Hayes, J., dissenting.

*Appeal from the United States Court for the Southern District of the Indian Territory; J. T. Dickerson, Judge.*

Action by B. F. Cline against J. W. Sanders and others. Judgment for plaintiff, and defendants appealed to the United States Court of Appeals for the Indian Territory, whence the cause was transferred to the Supreme Court of the State of Oklahoma.  Affirmed in part, and reversed in part.

On the 17th day of October, 1904, B. F. Cline filed his complaint in the United States Court for the Southern District of Indian Territory at Ryan, in which he represented that he was a citizen of the United States, and not a member of any tribe or nation of Indians, and that the defendants J. W. Sanders and O. M. Nichols are citizens of the Choctaw tribe or nation of Indians, and that J. P. Yates, Sr., is a citizen of the United States, and not a member of any nation or tribe of Indians; that B. H. Colbert and Frank Smith were United States marshal and deputy,

respectively, and that the United States Fidelity & Guaranty Company was surety for the said officials. For this cause of action against them he averred that on the 31st day of December, 1903, he was in possession of a certain tract of land southeast of the town of Terral, Ind T., situated in sections Nos. 18 and 7, range 6 W., township 8 S., that the farm land was in section 7, and that his residence was located in section 18; that during the year 1903 he had occupied the farm land under a rental contract with J. W. Sanders, one of the defendants, and that he and his family, consisting of his wife and five children, and an aged father and mother, were living in and occupying the house above mentioned; that for the year 1904 he had rented the land in section 7 from defendant Sanders, and the land in section 18, on which his residence was located, from one Chilcoat; that in January, 1904, Sanders, in violation of his agreement with plaintiff, filed a complaint in the United States Court for the Southern District of Indian Territory at Ryan, alleging that he was entitled to the immediate possession of the land leased to said Cline, who was defendant in that suit, and plaintiff in this one, and that upon this complaint procured a writ of possession out of the clerk's office, which was placed in the hands of the United States marshal, or his deputy, Smith; that acting on said writ, the marshal, by and through his said deputy, evicted plaintiff, not only from section 7, being the land described in the writ, but also from his house, located on section 18, and which plaintiff held by virtue of his contract with said Chilcoat. The defendants Nichols and Yates, above mentioned, were bondsmen for the plaintiff Sanders in that action. The petition alleges that the United States marshal, through his deputy Smith, came upon the land, and forcibly, maliciously, and unlawfully ejected the plaintiff and his family, including his father and mother, from the said house; that at the time the said writ was executed the weather was cold and damp; that plaintiff's mother was at that time sick and unable to care for herself; that they were unable to secure shelter for 48 hours; that

on account of these things the mother, who was aged, was seized with a spell of nervous prostration, from the effects of which she died. The plaintiff's household goods were injured. He then sets up special damages, and concludes with a prayer for exemplary damages.

To this petition the defendant filed a general demurrer which was by the court overruled, to which exception was saved. This was followed by a special demurrer in five paragraphs which was sustained as to that portion of the complaint "which seeks to recover damages for the death of his mother, and for the reason that same is speculative, too remote," and to that portion of the complaint which "seeks to recover for labor performed upon the premises," and overruled as to the balance. The defendants then filed answer, denying that plaintiff occupied the land in section 18, for the year 1903, as a tenant of any one excepting Sanders, and denying that plaintiff had made any agreement under which he was to be permitted to cultivate any land for the year 1904, and denying generally the allegation in reference to the forcible, malicious, or unlawful ejection of plaintiff or his family from the said house, or that either of them were wrongfully, or without right, evicted, and denying specifically the other allegations of plaintiff's complaint. Further answering, they say that on the 20th day of January, 1904, the defendant J. W. Sanders filed his complaint against the plaintiff, B. F. Cline, asking for the possession of the land and premises that plaintiff claimed and then occupied; that a writ was duly issued and placed in the hands of the marshal for execution; that he gave bond as required by law, and that the officer executed the writ by placing said Sanders in possession of the premises; that the plaintiff in this suit, defendant in that, failed to execute bond to retain possession of the land, and that on the 10th day of May, 1905, judgment was rendered therein, adjudging the right of possession of said property in plaintiff, and that defendant, Cline, should pay all the costs therein; that the judgment rendered therein settled the right of possession in the premises.

and the right of said Sanders to sue out said writ, and the right of the officer to issue the same, and is *res adjudicata* as to the rights of plaintiff in this action, and the same was pleaded in bar of this suit.

On the trial of the cause before a jury, judgment was rendered in favor of plaintiff, and against the defendants, in the sum of $1,000, from which defendants appealed to the United States Court of Appeals for the Indian Territory, and the cause is before this court by virtue of our succession.

*E. E. Morris* and *Cruce, Cruce & Bleakmore,* for appellants.
*Gilbert & Bond,* for appellee.

DUNN, J. (after stating the facts as above). The verdict of the jury determined the controverted questions of fact which are reasonably sustained by the evidence in favor of plaintiff, Cline, and the questions raised before us on this appeal are: First, did the petition state a cause of action; and, if so, did error occur in the acceptance or rejection of the evidence or the presentation of the issues by the court to the jury in its instructions? These questions are all raised by the assignments of error by appellant, and we will consider them in the order stated.

It will be observed that the sole allegation in reference to the parties Yates and Nichols, defendants, is that they were sureties upon the bond of J. W. Sanders in the forcible entry and detainer suit filed against plaintiff in this action, and where, in the execution of the writ issued thereunder, plaintiff herein was dispossessed. There is no allegation that they in any way actively contributed to the ejectment, or that they aided, assisted, abetted, in the actual eviction of plaintiff and his family, or assumed any benefit therefrom, so that it must be concluded that the only way in which it is sought to connect them, or create any liability on their part, is by virtue of the fact that they signed the bond in question. The bond given by these parties was conditioned, as is provided in section 2287 of the Annotated Statutes of Indian Territory of 1899, that:

"The plaintiff will prosecute his suit to effect and without delay, and if the defendant recover judgment against him in the action he will restore the possession of the lands, tenements or other possessions in the complaint mentioned, if restitution thereof be adjudged, and will pay the defendant all such sums of money as may be recovered against him by such defendant in the action for any cause whatever."

By this section, which specifies and limits the liability of these sureties, it will be observed that they are liable only in the event that plaintiff fails to prosecute his suit to effect and without delay, and in the event that restitution be adjudged to pay the defendant any sums of money recovered against plaintiff by him. In that case Sanders, plaintiff, was successful, and judgment was rendered against Cline, the defendant therein, and this exonerated these sureties, and relieved them of liability for the damages sued for herein; this suit, strictly speaking, being one for trespass for the eviction of plaintiff from land not mentioned in the writ, and not for wrongful dispossession of the land on section 7, which is described therein, nor is it a suit on the bond. Hence the judgment as to these parties is reversed and set aside.

The next question is, Is the plaintiff in that suit, J. W. Sanders, liable? It is argued in his behalf that, having succeeded in the forcible entry and detainer suit, the judgment therein is a bar to this action, and is *res adjudicata* to any damages which defendant may have sustained. We believe that section 2301 of the Statutes of Indian Territory, which provides: "Neither the judgment nor anything in this act shall bar or preclude the party injured from bringing his action of trespass or ejectment or other action against the aggressor or party offending"—is a complete answer to defendant's insistence. The action of forcible entry and detainer is an action for possession merely. It is a speedy one, wherein the right to the possession of real estate is involved. Usually jurisdiction is accorded by the statutes of the different states to justices of the peace; and hence, for and on account of the likelihood of error or mistakes, or for abuse of it, the statute

in this jurisdiction, as many of the others, provides that the party proceeds at his peril, and that the judgment is not *res adjudicata,* and does not conclude the defendant from prosecuting any other action. So that the judgment taken by plaintiff Sanders is not a bar to a suit for any damages which may have been inflicted upon the defendant, should it develop that, in the enforcement of a writ issued at his instance, wrong or oppression was inflicted upon defendant, and in the case at bar the fact that defendant Sanders was the one who put the machinery in motion, out of which grew any infraction of plaintiff's rights, created, under all of the authorities, a liability on his part. *Woodbridge v. Conner,* 49 Me. 353, 77 Am. Dec. 263; *McNeeley v. Hunton,* 30 Mo. 332; *Berry v. Fletcher et al.,* Fed. Cas. No. 1,357; *Johnson v. Tompkins,* Fed. Cas. No. 7,416; *McVea v. Walker,* 11 Tex. Civ. App. 46, 31 S. W. 839. These cases might be multiplied at length, but those cited are sufficient to show that the rule is as is stated therein. For instance, in the case of *Woodbridge v. Conner, supra,* the Supreme Court of Maine holds: "As all participating in a trespass are principals, an action lies, as well against one who orders a wrongful act as against him who does it." Or, as is held in the case of *Berry v. Fletcher, supra,* where Judge Dillon, speaking for the court, said: "All who instigate, promote, or co-operate in the commission of a trespass, or aid, abet, or encourage its commission, are guilty." So we hold that the petition states a cause of action against the defendant Sanders:

The question now arises as to the liability, under the allegations, of the marshal and his deputy. By section 31 of the Statutes of Indian Territory the laws of Arkansas as embraced in Mansfield's Digest, which are not locally inapplicable, or in conflict with the act extending them, were extended over and put into force in Indian Territory, and under it, it was provided that "the United States marshal of the Indian Territory shall perform the duties imposed by said chapter on the sheriffs in said state." And by section 3885 it was made the duty of

the marshal of each district "to execute throughout the district all lawful precepts directed tó him," and by section 3886 they shall have "the same powers, in executing the laws of the United States, as the sheriffs and their deputies." So that it will be seen that it is the intention of the law to treat the United States marshal as a sheriff, and the duties and liabilities of himself and his deputies are the same as those of sheriffs. Under a practically uniform line of authority of the different states of the Union sheriffs are held to be liable for the acts of their deputies when armed with process issued to them, and when acting under the same, and performing duties which they are called on to perform by reason thereof by virtue of their office. Cooley on Torts (2d Ed.) p. 156; Crocker on Sheriffs, § 849; Mechem on Public Officers, § 798; *State v. Moore,* 19 Mo. 369, 61 Am. Dec. 563; *Curtis v. Fay,* 37 Barb. (N. Y.) 64; *Pond v. Leman,* 45 Barb. (N. Y.) 152. In reference to the liability of a sheriff for the wrongful acts of his deputy, acting under process, Judge Cooley, in the second edition of his work on Torts, *supra,* speaks as follows:

"To charge one with participation in a wrong it is generally essential that he should personally have contributed to it; but this, as has already been shown, may have been by advising or procuring it to be done, when he did not otherwise take part in it. In some cases, also, the ratification of the act is sufficient; and, in all cases where one has obtained possession of the property of another without right, he is a wrongdoer in retaining it, irrespective of any questions regarding the liability of others. It was once held in Massachusetts that a sheriff, who was not present when his deputy, in the service of a writ, committed a trespass, could not be held liable as a joint trespasser with him; but the better doctrine is that the sheriff, by construction of law, is always present with the deputy who bears his process, and is legally responsible for his acts."

Mechem on Public Officers, *supra,* states the rule to be as follows:

"It will be settled that the sheriff is liable for the misconduct, abuses, trespasses, or neglect of his deputy, acting by color of his

authority, and must respond for all damages which he may thereby occasion, either to the plaintiff in the process, or to the defendant, or to strangers. This is so completely the liability of the sheriff as such that the sureties upon the latter's official bond must answer for it."

The only exception to the rule is stated to be as follows: "But the sheriff is not liable for the wanton extraofficial acts of his deputy"—and in support of this proposition one authority is cited, being *State v. Moore, supra.* This was not an action for tort, but in contract on the sheriff's bond. An examination of that case shows that the court in the consideration of the same held:

"It is an undoubted principle that the master is not liable for the wanton acts of those whom he may employ. If an agent, transcending the limits of his authority, wantonly commits a trespass, his principal is not liable to an action for such wrong, but the sheriff is liable for all acts done by his deputy as such, for all abuses; for every perversion of the authority with which he is instructed he is liable, though they may be committed by his deputies. He is responsible for all trespasses done by a deputy by color of his office. This is a well-established principle. 6 Bac. Abr., tit. Sheriff, 156."

And the court in the syllabus stated the rule to be as follows:

"The sheriff is liable for all acts done by his deputy as such. Sheriff's bondsmen are liable for his trespass committed in seizing property exempt from execution."

So that this exception, if it be one, does not affect the case at bar, or change the general rule.

In the case at bar, all that was done by deputy Smith, was done by virtue of the fact that he was armed with a writ, and that which he did was done by him because of the fact that he was a deputy marshal, and had such writ. We think there is no question on the liability of the deputy, and the marshal being responsible for his acts, and that the petition herein states a cause of action as to both.

There is some diversity of opinion upon the question as to whether or not the sureties of the marshal or his deputy are in any event, and in a proper action, liable to plaintiff for acts done

under the conditions set forth in this petition. The question is well considered, and the rule, in our judgment, correctly applied by Mechem in his work on Public Officers (section 284), which, after mentioning the fact that the courts are not all agreed upon the correct rule in such a case, states:

"Upon the one hand, it is said that the officer acts officially, and hence binds his sureties only when acting in pursuance and by virtue of his writ, and as his writ justifies only the seizure of the property of the defendant therein named not exempt from execution, his seizure of the goods of a stranger, or his seizure of exempt property, is a purely voluntary and unauthorized trespass, which neither his writ nor his official character can justify, and which imposes upon the officer merely personal, and not official, responsibility. On the other hand it is said that the undertaking of the sureties is that their principal will well and faithfully execute the duties of his office, and that he cannot be deemed to have done so when he seizes the property of a stranger, or levies upon property exempt from execution. There is therefore such a breach of the condition of the bond as renders the sureties liable. The nonliability of the sureties in such cases is maintained in New Jersey, North Carolina, Texas, and Wisconsin, and perhaps in Alabama, Indiana, and Mississippi. But the rule of liability is not only supported by the soundest reasons of policy, but is maintained by the great preponderance of authority, being adopted in California, Iowa, Illinois, Kentucky, Maine, Massachusetts, Michigan, Missouri, Nebraska, New York, Ohio, Pennsylvania, Texas, Virginia, Washington, the District of Columbia, and the Supreme Court of the United States."

But did the petition state a cause of action as to the United States Fidelity & Guaranty Company, the surety on the bonds for both the marshal and his deputy?

"Where the alleged trespass was of such a nature that it might have been committed by two or more persons, the injured party may sue separately or jointly all or any of those persons who wrongfully contributed as actors, directors, requesters, aiders, or abettors to its commission, or who, after the commission, have assumed the benefit of it, for all of them are jointly and severally liable for the acts of each and of all." (21 Ency. P. & P. p. 806.)

While in a proper suit the surety could be made to respond in damages, the petition in this case contained no allegation that such

company contributed as an actor, director, requester, aider, or abettor, or assumed any benefit from the trespass. Hence it could not be held liable for any tort committed by those who did. Furthermore, this was a suit for damages incurred in the commission of a tort, and with it could not be joined in one count, as is done, in the same action, a suit on the official bonds of the officers who, with others, were charged with having committed it. If the wrongful acts committed by the officers and the others is charged, not in contract, as a breach of the official bond, but in trespass, there is a misjoinder, not only of tort and contract, but of parties, as the liability incurred does not affect all. *Clinton v. Nelson et al.*, 2 Utah, 284; *Hoye v. Raymond*, 25 Kan. 665: *Ghiradelli v. Bourland*, 32 Cal. 585; 15 Ency. P. & P., p. 119. And there being no averment that the company committed any of the acts complained of, no cause of action is stated against it.

We are not unmindful of, but have noted with care, the case of *Thompson v. Gatlin et al.*, 58 Fed. 534, 7 C. C. A. 351, cited us by appellants, but the distinction between that case and the one at bar is that that was a case wherein it was sought to join a cause of action for malicious prosecution and on the bond for damages growing out of the alleged wrongful dispossession of plaintiff in a forcible entry and detainer action; while the case at bar is one for trespass for the unlawful dispossession of the plaintiff, not of lands involved in the forcible entry and detainer action, but of his residence on a tract of land separate and distinct. In the case at bar if the plaintiff was bringing action on the bond for being dispossessed of the premises set out and described in the writ held by the officer, the rule annunciated by the Circuit Court of Appeals would obtain. But such is not the case, and hence the authority is not controlling in the case at bar.

The question now arises on the introduction of the evidence. As was noted above, a demurrer was sustained by the court to that portion of the petition under which it was sought to show liability to plaintiff from defendants by virtue of the illness and death of plaintiff's mother shortly after the eviction. On the trial of

the cause, over the objection of defendants, the plaintiff was permitted to testify that the weather was cold and windy, and as disagreeable a day as there was that winter, and that his mother, who was frailly built, but who was in reasonably good health and of the age of 62 years, by reason of being turned out into such weather, took a cold, from which she died two weeks later. The evidence that the mother was made sick from the exposure was admitted, as was stated by counsel for plaintiff, not "as a cause of action, or as a basis on which a cause of action could stand, but as a matter in aggravation of exemplary damages, if shown to be entitled to such, and for that purpose only." Of course the bare fact of her death was inadmissible for the purpose of increasing either the actual or exemplary damages, and the only purpose for which testimony of her illness and its effects could have been legitimately offered or received was to aid in showing that the parties engaged in the eviction selected an unduly cold and disagreeable day, and that the ensuing illness of the members of plaintiff's family could, or might have been, reasonably anticipated. And evidence of the succeeding illness and death of the mother could properly be applied, in aider of such showing only.

Yet the authorities, while agreeing upon the admissibility, are not uniform upon the limitation we thus place upon it; some holding it admissible only to aid in showing the aggravated character of defendant's acts, while others extend its operation to the extent of allowing punitive damages to be predicated upon it. For instance, in a case cited by Watterman on Trespass, § 1109, *Davenport v. Russell,* 5 Day (Conn.) 145, it was held to be competent to admit as evidence that, where the defendant entered the house of plaintiff with the intent to ravish his wife, he "greatly disturbed, terrified, and injured the plaintiff's family, put his wife in fear, and endangered her life and health." Such evidence was admitted, as the author says, "to aggravate the damages." And again, in the case of *Razzo v. Varni,* 81 Cal. 289, 22 Pac. 848, one for trespass, where evidence was admitted to show that the wife became sick from fright and excitement caused by defendant's violent

trespass, which sickness continued for three months, the court said in the discussion:

"The evidence was admissible to show that she was in a condition where fright might have affected her, as she testified it did. It was also admissible to show that the forcible entry was accompanied by circumstances of insult which had a material bearing on the question of damage."

The court held in the syllabus, in reference to this evidence, that:

"Evidence is admissible to show that a forcible trespass on the close of plaintiff was accompanied by circumstances of insult and fright to plaintiff's wife which caused her illness for a long period, and to show that she was in a condition where fright might have caused her illness."

Also an English case (*Huxley v. Berg et al.*, 1 Starkie, 98), which was an action for trespass for breaking and entering plaintiff's dwelling house, the portion of the case material to the one in hand states the facts as follows:

"The plaintiff was allowed to give in evidence that his wife was so terrified by the conduct of the defendants that she was immediately taken ill, and soon afterwards died, but this was held to be admissible for the purpose only of showing how outrageous and violent the breaking, etc., was, and not as a substantive ground of damages."

The syllabus reads as follows:

"A plaintiff in an action of trespass may give in evidence a consequential injury to his wife, not as a substantive ground of action, but to show how violent the defendants' conduct was."

So, it will be observed from these authorities that, while the evidence is admissible, there is not entire accord as to the effect to be given to it.

The Supreme Court of Pennsylvania, in a case of trespass (*Douty et al. v. Bird*, 60 Pa. 48), said:

"There was evidence from which a jury might have concluded that the trespasses were malicious, as well as willful. In such a case a court should not be too stringent in holding the rules excluding the evidence as to damage, but should rather wait and in-

struct the jury as to the true rule to be given upon the whole evidence."

The defendants objected to evidence here under discussion, and offered an instruction as follows:

"You are charged that in no event can you consider or take into consideration the death of the plaintiff's mother as exemplary damages, or otherwise, to the plaintiff, and the testimony introduced upon the part of the plaintiff in regard to the death of his mother should be wholly disregarded by you."

This instruction was refused by the court, and the following one given:

"I will instruct you, gentlemen of the jury, that you cannot take into consideration, in assessing either actual or exemplary damages, the damages that accrued, or might have accrued, by reason of the wrongful ejection of the other members of the family, that is, the damage that accrued to them."

This instruction was in keeping with the most favorable view to the defendants adopted by the courts, and in keeping with the practice favored in the Pennsylvania case in reference to the admissibility of evidence of this character, and the duty of a court on instructing a jury as to the true rule of weighing and applying it on the whole evidence. In our judgment, taking this view of the matter, there was no error in the admission of this testimony.

The defendants offered a number of instructions which were refused by the court, and to which refusal exceptions were saved, and objected to a number of instructions given by the court, all of which are here presented for our consideration. The instructions numbered 1, 2, 3, and 4, requested by the defendants, which were refused, were practically covered by the instructions which were given by the court. They relate to the issues in the case, and the court, after reciting the same, as shown by the pleadings, and stating that the defendants entered a general denial to all of them, instructed that the burden was upon plaintiff to prove "in the first place his right to the premises in question and the possession of the same; in the second place, his wrongful eviction from the premises by the defendants, and their want of authority

to so evict him from the premises; in the third place, that the acts of the defendants complained of were such acts as would amount to oppression, or would amount to such gross neglect of their duty as to imply malice upon their part." In this, we believe the court fairly presented the issues to the jury.

The fifth instruction offered was properly refused, as it is not the law that the determination of a forcible entry and detainer suit was conclusive and binding upon the plaintiff as to the defendant J. W. Sanders' right to sue out said order of possession, and as to the officer's right to execute the same, and this by reason of the statute (section 2301, *supra*). And for the further reason that the real issue in the case presented by the pleadings and supported by the evidence was the one as to whether or not the officer acted within the writ with which he was armed.

The sixth instruction offered and refused related to the liability of Yates and Nichols, who were sureties on the bond in the forcible entry and detainer suit, and we have sustained that by holding that they were not liable in this action.

The seventh instruction, which relates to the damages which plaintiff might recover by reason of the death of his mother, was covered by the instruction as shown above.

Instruction No. 8, offered, was so inaccurate in its statement that we cannot say that the court did not refuse it for this reason, as it charged the jury that, although they may believe that the house was situated in section 18, and not specifically described in the order of possession, yet if they believe that the house was on the line between section 7 and 18, and the plaintiff Cline had received notice to vacate the same, then and in that event the officer had the right to evict him. In view of this and the instruction given, we cannot say its rejection was erroneous. "To entitle a party to an instruction asked, it must be correct as an entirety. If not correct in all its parts, both as to law and facts, it may properly be refused." 11 Ency. P. & P. p. 234.

The court in its instructions to the jury, referring to the forcible entry and detainer suit, instructed them that:

"Before an officer, or any one for him, could dispossess the plaintiff in this case of the premises that he occupied, the plaintiff must have had notice served upon him, which definitely described the premises in which he lived, and which he occupied, and the premises which the plaintiff in that case sought to dispossess him of."

And further instructed them that, unless they found that the notice was served upon the plaintiff prior to the commencement of the action, and followed up by a writ of possession which described the premises in the same definite way, the acts of the officers were wrongful and without authority, and that "on the other hand, if you believe that the writ of possession and the notice contained a description of the place that was occupied by the plaintiff in this case, then the acts of the officers would not be a trespass upon his rights." These instructions were excepted to by defendants, and error is assigned thereon. They were followed by the following instructions:

"If you believe from the evidence in the case that the acts of the officers in dispossessing the plaintiff were according to law, and were not a trespass, for the reason that the writ of possession under which they were working described the premises in question, then neither the officers in this case, nor one of the defendants working under them, would be liable for any damages whatever, if you should further find that in dispossessing the plaintiff they used no more force than was necessary to take the property and the persons of the plaintiff and his family away from the place in question, and used no oppression save that which was absolutely necessary in conducting their official business."

The undisputed evidence in the case, and the only evidence on the proposition involved, shows that the notice which was served upon plaintiff was as follows:

"To James Cline: You are hereby notified that I demand that you quit and deliver up to me the possession of the following described lands and improvements thereon to wit: The S. W. 1-4 of section 7, T. 8 S., R. 6 W. You will deliver possession of said lands to me on or before January 18, 1904, or suit will be instituted to obtain possession thereof. Yours very truly, J. W. Sanders, by E. E. Morris, His Attorney."

And the writ of possession under which the officer acted contained the following description, as being the land from which the officer was authorized to evict plaintiff:

"About 65 acres of land together with all improvements thereon, situated in the Chickasaw Nation, I. T., about 4 1-2 miles S. E. of the town of Terral, and being more particularly described as follows: The south part of the N. E. 1-4 of the N. E. 1-4 and the east part of the N. W. 1-4 of the N. W. 1-4 and the east part of the S. W. 1-4 of the S. W. 1-4 and part of the S. E. 1-4 of the S. E. 1-4 of section 7, T. 8, S., R. 6, W."

The rule contended for by appellant that an officer is protected in the service of a writ issued by the proper officials when the same appears to be fair upon its face, and the citation in support thereof from Mechem on Public Officials, is unquestionably correct. That is: "That for the proper service of such process the officer incurs no liability, however disastrous may be the effects upon the defendant, or however unlawful may have been the proceedings which preceded it." But this protection to the officer obtains only when he acts within the scope of the writ. Cooley on Torts (2d Ed.) p. 540; *Boston & Maine Railroad v. Small,* 85 Me. 462, 27 Atl. 349, 35 Am. St. Rep. 379; *Linblom v. Ramsey,* 75 Ill. 246; *Buck v. Colbath,* 70 U. S. 334, 18 L. Ed. 257; Crocker on Sheriffs, §§ 407, 571, 572. The rule is correctly stated by Judge Cooley, cited *supra,* to be as follows:

"The writ being found to be a lawful one, it next becomes necessary to the officer's protection that he proceed upon it according as the law directs. He can not demand and secure the protection of the law while disregarding the commands laid upon him for the protection of the rights of others."

Mr. Crocker in his work on Sheriffs, cited *supra,* in reference to the duty of a sheriff when making service of execution (section 407) says:

"If it be for the delivery of the possession of real or personal property, it shall require the officer to deliver the possession of the same, particularly describing it."

And, speaking in reference to the writ of possession in sections 571 and 572, lays down the proposition which we have an-

nunciated that, if the sheriff gives possession of any lands not in the writ, he will be a trespasser, in the following language:

"The writ of possession is the process under and by virtue of which the sheriff is authorized and commanded to deliver to the plaintiff, in an action of ejectment, or in an action for dower, the possession of lands recovered in such action. * * * Under this writ it is the duty of the sheriff to remove all persons from the premises described in the writ, and of which possession is to be given, and all goods and property that may be thereon. and to put the plaintiff into full and complete possession of the premises. The sheriff executes the writ under the direction of the plaintiff or his attorney, and he may first demand an indemnity. The party or his attorney, is bound, at his peril, to point out the land recovered, and of which possession is to be given; and, if the sheriff gives possession of any lands not in the writ, he will be a trespasser."

Now, with these rules in mind, we come to determine the effect of the instruction which was given to the jury, in which they were instructed that, before the officer could dispossess the plaintiff, the plaintiff must have notice served upon him which definitely describes the premises, taken in connection with the instruction which provided that, if the jury believed "that the acts of the officers were according to law, and were not a trespass, for the reason that the writ of possession under which they were working described the premises in question," etc. It is testified to, and not denied, that the notice quoted above was the only one served upon the plaintiff. It will be observed that it was addressed to James Cline, and included but the land on section 7. This was not such a notice as the law required, to evict Cline from section 18. Now, taking into consideration the writ of possession under which the officials acted, and the fact that it likewise described the land lying within the bounds of section 7, and embracing none of the land in section 18, how were defendants injured by such an instruction? If the writ under which the officer acted had described the land on which the house was doubtless found by the jury to be situated, then a requirement in an instruction to find in addition thereto that some prerequisite condition existed would probably

be error.   The only positive testimony in the case as to the location of the house showed that it was on section 18, while the most that the defendant Sanders would testify to was that he thought the house was on the line, saying, "I think it is on the line, to the best of my knowledge."   It would be a dangerous precedent to set in the state to say that a man could be dispossessed of his property upon a writ which did not describe the property which he swore he occupied, and which was sought to be sustained by no more than a mere speculative assertion of one of the defendants that the writ may have been partially right, especially at a time when the responsible party is charged with trespass and damage caused by its execution.   To justify the actions of the defendants under the writ, it should have described the particular property with substantial particularity.   It ought not to be left to conjecture and speculation.   To hold otherwise would destroy the security of a citizen in his person and estate, and render nugatory the rules for his safety which have been adopted and acted on for generations, and which all experience  justifies us in holding salutary.

A peaceable possession is presumptively always rightful, and a forcible entry upon such possession, even in the assertion of a valid title against a mere intruder, will not be sanctioned.   For, as Judge Cooley says in section 380, vol. 2 (3d Ed.), of his work on Torts:

"Whoever assumes to make such an entry makes himself judge in his own cause, and enforces his own judgment. He does this by the employment of force against a peaceable party. As the other party must have an equal right to judge in his own cause and to employ force in giving effect to his judgment a breach of the public peace would be invited, and any wrong, if redressed at all, would be redressed at the cost of a public disturbance, and perhaps of serious bodily injury to the parties."

Parties who disturb such peaceful possession, and who seek to justify it under a writ, must show that they acted within the scope and the terms of the process.   There was no dispute as to the terms of the process in this case, and practically  none  as  to

the location of plaintiff's building or residence. This being true the instruction mentioned in no wise prejudiced defendants' cause; and, in addition thereto, the instruction which provided that the officer and the other defendants would be relieved of liability for a proper execution of the writ of possession under which they were working, if it described the premises, gave defendants all they were entitled on the law.

Exceptions were taken by defendants to an instruction given by the court in the case of *City of Oklahoma City v. Hill Bros.*, 6 Okla. 114, 50 Pac. 242. The city was sued for damages for trespass on plaintiff's possession, but not for a conspiracy, nor for damages resulting therefrom. The court gave an instruction to the effect that the city would be liable for the acts of its officers in forming a conspiracy with the sheriff in the forcible and unlawful dispossession of the plaintiffs of the premises in controversy. There was no averment of conspiracy contained in the amended petition on which the matter was tried, and the matter of a conspiracy was not in the case. The court said:

"The city was not sued for a conspiracy, nor for damages resulting therefrom, but it was sued for damages for trespass upon the plaintiffs' possession. The instruction given, however, did the defendant no injury. It did not make the plaintiffs' recovery any more easy before the jury, and did not authorize the jury to return damages for a conspiracy, and it does not appear that any were given by the jury on that account."

The instruction was thus held to be entirely unnecessary, and improper, but the Supreme Court held that it was not erroneous, for the same reason that we hold the instruction referred to in this case not to be erroneous for the fact that it did not make plaintiffs' recovery any more easy before the jury, nor were any damages predicated upon a finding that no notice was given. There is no question in our mind that the instruction requiring defendants to show notice had been served had no effect whatever upon the verdict. *Kuhl v. Supreme Lodge*, 18 Okla. 383, 89 Pac. 1126.

We have examined the other exceptions taken and presented, and find no error therein.

The judgment is accordingly reversed as to defendants, Nichols, Yates, and the United States Fidelity & Guaranty Company, and affirmed as to all others.

Kane and Turner, JJ., concur; Williams, C. J., and Hayes, J., dissent.