ODEN et al. v. RUSSELL et ux.

No. 35214. Nov. 18, 1952.

Rehearing Denied Dec. 16, 1952.

*251 P. 2d 184.*

Owen F. Renegar, Oklahoma City, for plaintiffs in error.

Hall & Cotten, Oklahoma City, for defendants in error.

GIBSON, J. The parties will be given their trial court designation. Plaintiffs in error were defendants.

In this cause plaintiffs filed an amended petition alleging ownership of the south two acres of lot 6 in McMullin's addition to Oklahoma City and that defendants had ousted plaintiffs of possession, without right, of the north 93 feet of said real estate; that defendants had torn down and removed a boundary line fence constructed by plaintiffs, to their damage; that defendants had turned their livestock into a boysenberry patch and had later plowed up and destroyed the same, and by unlawfully keeping plaintiffs out of possession had prevented plaintiffs from using said land for truck gardening. It was further alleged that the taking of said land was willful, fraudulent, oppressive and malicious. Plaintiffs prayed judgment for actual and for exemplary damages.

Issue was joined, and on the trial a jury returned a verdict for plaintiff for $350 actual damages and $750 exemplary damages, and defendants appeal from the judgment on the verdict.

In their brief defendants discuss their assignments of error under five propositions, but one concerning objections to certain instructions is abandoned. The remaining propositions are all predicated on the contention that the evidence does not sustain the verdict and judgment for either actual or exemplary damages.

Defendant Marvin E. Oden, Sr., and his wife were the owners of lot 6, described above, which was a tract of land less than five acres in area. On April 23, 1946, they conveyed, by warranty deed, to one J. P. Bowie, the south two acres of said lot 6, and Bowie conveyed the same to plaintiffs on October 4, 1948. About a month later Marvin E. Oden, Sr., and wife conveyed to defendants Marvin E. Oden, Jr., and Dorothy E. Oden, husband and wife, the north three acres of said lot. This resulted in an overlap of descriptions of properties conveyed by Oden, Sr.

Prior to the last mentioned conveyance a division line fence had been erected on the north side of plaintiff's two acres. Defendants say that a surveyor, whose name they had forgotten, surveyed the north three acres described in the Marvin E. Oden, Jr., deed, and had placed stakes south of the fence. Without the knowledge or consent of plaintiffs the defendants,

in March, 1949, tore down the aforesaid line fence and erected another fence 93 feet south of the original fence. It is admitted that defendants' stock grazed over this area and that later defendants plowed the same. Plaintiffs had their two-acre tract surveyed by the county surveyor and thereby learned that the property line was at about the place of the original fence between the properties.

In telephone conversations James H. Russell demanded of Marvin E. Oden, Jr., the removal of the fence. The evidence is in conflict regarding the use of profane language by these two parties in their several telephone conversations. The fence was not removed and this lawsuit was filed.

Defendants cite Cook v. First National Bank of Duncan, 110 Okla. 111, 236 P. 883:

"Where there is no competent evidence reasonably tending to sustain the verdict and judgment, such judgment will be reversed on appeal."

This is a correct rule and it has been announced many times by this court. But each case must stand on its own facts, and where the record reveals conflicts in the evidence, intended to establish facts material to the issues, it can no longer be said that no competent evidence was introduced to sustain the verdict.

In the instant case the items of actual damage upon which plaintiffs relied were (1) destruction and loss of the line fence; (2) destruction of 200 growing boysenberry plants; (3) loss of the berry crop for two seasons by reason of their destruction by defendants. The survey showed the tract to be 165 feet wide, and plaintiffs' testimony showed it would cost $1 per foot to replace the fence. No evidence was offered to dispute that testimony.

There is a conflict in the evidence as to whether the original fence was moved to the south, as testified by defendants, or whether the wire of that fence was rolled up and removed to other places, as plaintiffs testified.

Defendants say that the proper rule for measurement of damages was not applied, and, since no evidence was offered in accord with the proper rule, there was no competent evidence to support the verdict. We do not agree. Evidence as to the cost of replacing a destroyed fence is competent in proof of plaintiff's damage.

"In an action for damages on account of the removal of fencing and other fixtures from real estate, if the things removed, although a part of the real estate, have a value which can be accurately ascertained without reference to the soil on which they stand, recovery may be had of the value of the things thus removed without reference to the value of the real estate before and after the removal." Kilgore v. Lyle, 30 Okla. 596, 120 P. 626.

"Ordinarily the measure of damages for the removal or destruction of buildings from real estate to which they are attached as a part thereof is what it would cost to replace them, not exceeding the value of the entire property, but if for any reason the buildings could not be replaced, the measure of damages would be the difference in the value of the entire property before and after the removal or destruction of the buildings." Silva v. City Council of City of McAlester, 46 Okla. 150, 148 P. 150.

The evidence as to the value of the boysenberry plants was in conflict. Plaintiff placed his value on producing plants which he said were totally destroyed by defendants. His value of $2 per plant was based on cost of plants and three years of care until they reached the stage of production. Defendants offered evidence that the value of plants for planting purposes was ten to twelve dollars per hundred plants. Under such a record it cannot be said that there was no competent evidence of value. The most that can be said is that under this record the evidence as to value was in conflict and thus presented a question for the jury. We cannot say that the verdict

for actual damage is not supported by any competent evidence.

Defendants predicate their contention of error in the assessment of exemplary damages upon their assumed premise that there was no proof of actual damages, and cite cases including Brown v. Higby, 191 Okla. 173, 127 P. 2d 195, wherein this court said: "It is the rule in this jurisdiction that in the absence of actual damages, there can be no recovery of exemplary damages." Again we say that the rule announced is the correct rule of law, but it has no application here, since we have seen that there was competent proof of actual damages.

Defendants cite Keener Oil & Gas Co. v. Stewart, 172 Okla. 143, 45 P. 2d 121; Galt-Brown Co. v. Lay, 183 Okla. 87, 80 P. 2d 567; Pure Oil Co. v. Quarles, 183 Okla. 418, 82 P. 2d 970, and other cases, stating the general rule that fraud, malice, oppression or gross negligence must be established to authorize recovery of exemplary damages in a tort action and say that the evidence in the instant case did not sustain the verdict for exemplary damages under such rule.

To enter into a detailed review of the evidence on this subject would unduly extend this opinion. The evidence shows that when the father conveyed to the son and wife all defendants knew of the previous conveyance of the south two acres of the tract to plaintiff and his grantor. They knew that the line fence defined the northern limits of plaintiffs' land, when they tore down and removed that fence in plaintiffs' absence and without his consent. All three defendants were present and participated in the removal of the fence.

Defendants' attitude and intent is revealed by the following excerpt of plaintiffs' testimony concerning his request of Oden, Jr., to remove the newly built fence:

"Q. What was the first, tell the jury what the first conversation was? A. Well, I called him up about moving the fence; he said the line, he bought three acres and he dam sure was going to have three acres, and that is where the fence would be, and let it alone, and that is what I done."

In filing this action plaintiffs pursued a legal method of settlement of the controversy, while defendants had attempted to take the law into their own hands.

A similar situation arose in Main v. Levine, 189 Okla. 564, 118 P. 2d 252, wherein, in the body of the opinion, we said:

"In the present case the plaintiffs were living in the property of defendants under a claim of right which the jury found was well taken, and which gave them the right of further occupancy thereof. Defendants ignored the legal methods provided for securing possession of the premises, and in disregard of the rights of plaintiffs and their claim of rightful possession, attempted by force to remove them from the premises, and were about to do so when plaintiffs, to avoid further conflict, removed therefrom. This conduct of defendants, if not malicious, was an act of such reckless and wanton oppression that malice on the part of defendants might be inferred, and such as to merit punishment. While the force was not applied to the persons of plaintiffs, it was nevertheless a forcible and unlawful ejection from the premises, in disregard of their right of occupancy. Sanders v. Cline, 22 Okla. 154, 101 P. 267; Crow v. Davidson, 186 Okla. 84, 96 P. 2d 70, 126 A.L.R. 123."

We have reviewed the entire record and, while the evidence is in conflict, we hold that there is sufficient evidence to support the verdict for exemplary damages.

Plaintiffs move for judgment on the supersedeas bond which appears in the record, and under 12 O. S. 1951 §971, and the rules of this court, they are entitled to such judgment.

It is therefore ordered and adjudged by this court that plaintiffs James H. Russell and Gertrude H. Russell have and recover from defendants, as principals, and Joe T. Oden, Mrs. M. E.

Likes and D. L. Gilmore, as sureties on said bond, the sum of $1,100, with interest thereon at 6% per annum from January 16, 1951, and the costs of this action:

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, O'NEAL, and BINGAMAN, JJ., concur.