John D. TIMMONS, Appellee,

v.

ROYAL GLOBE INSURANCE COMPA-
NY, d/b/a Royal Indemnity Company, a
Foreign corporation, and David So-
wards, an individual, Appellants.

No. 53638.

Supreme Court of Oklahoma.

July 27, 1982.

Rehearing Denied Sept. 27, 1982.

Rhodes, Hieronymus, Holloway & Wilson, Bert M. Jones, Chris L. Rhodes, R.P. Redemann, Tulsa, for appellants.

W.C. "Bill" Sellers, Inc., Sapulpa, McBride & Bonnell, Inc., Tulsa, for appellee.

HARGRAVE, Justice.

The appellants, Royal Globe Insurance Company and David Sowards, bring this appeal from a jury verdict and subsequent judgment for the plaintiff, John D. Timmons, in the amount of $9,126.86 actual damages, $25,000 damages for mental pain and suffering, and three million dollars punitive damages.

The initial petition in this action was filed on October 28, 1976; the action was removed to Federal Court and subsequently remanded to the State Court. The appellant, Royal Globe, answered, generally denying allegations of conspiracy to defeat payment of claims, slander and malicious

interference with business enterprises, and reserving the right to answer further upon completion of discovery. On December 1, 1978, plaintiff amended alleging Royal Globe and Sowards had maliciously and in bad faith refused to pay the claim made against plaintiff's insurance policy and to defend plaintiff against the claims of the passengers injured in the plane crash that initiated this action. Globe demurred to this petition, alleging the amendment was barred by the statute of limitations and that demurrer was overruled. After discovery, Globe filed a motion for partial summary judgment against the punitive damage claim which was overruled the day of trial.

The factual surrounding of this litigation revolves around an excursion in a Piper aircraft to and from Alaska carrying six persons. The plaintiff, John D. Timmons, was the pilot of the aircraft. He had purchased a policy of insurance through the Walter Bryce Insurance Agency and Mr. Homer Hilst, agent of Royal Globe. The policy was issued for two years beginning September 26, 1972.

On the return from Alaska on August 3, 1973, the Piper crashed in the region of Hell's Canyon, Wyoming. With plaintiff were his wife, his son and daughter-in-law. Also in the aircraft at the time of the crash were guests Sally Mae and Robert H. Wilker, related by marriage to plaintiff's son. The cause of the crash was listed as a density-altitude crash, which refers to an aircraft being too heavily laden for the lift that can be developed by the wings of the craft at a given atmospheric condition. Plaintiff also stated he found bird remains in the engine which possibly compounded the problem. The crash occurred in a remote area and all injured were brought out of the national forest by horseback.

When plaintiff arrived in Tulsa he found a note from Mr. Warren Edmon, an employee of Royal Globe. Pursuant to that note and the meeting it sought, the aircraft log books and the pilot's medical certificate and pilot's certificate were turned over to the employee.

Royal Globe hired an investigator working out of Colorado to investigate the crash. One of his memos contained in the insurance file reflects that the aircraft's airworthiness certificate was on board the airplane at the crash site. This presence was required as a condition of the policy. On one contract with plaintiff, Mr. Lee represented himself as a salvage buyer over the telephone, and on the next call he referred to himself as an investigator working for Royal Globe. On a subsequent telephonic contact he represented himself as representing Flight Investigators, Inc. The call was terminated when plaintiff informed the caller he recognized his voice.

The airworthiness certificate was not seen again after the insurance investigator reported it to be present in the aircraft. Plaintiff's evidence disclosed that the Federal Aviation Administration was investigating the absence of the certificate and that Globe's agents were aware of that fact. In the face of the knowledge of this, Globe's employees did not inform the F.A.A. that their investigation showed the certificate was, at one time, present in the aircraft.

A further policy condition required that the plaintiff guard the wreckage from pilferage. Mr. Edmon informed Timmons after inquiry that since the crash site was so remote the aircraft need not be guarded. Despite the remote location, however, the avionics were stolen from the wreckage. Globe then listed failure to guard the aircraft as a reason for denying coverage in its investigation file.

Mr. Timmons' insurance contract also required the pilot of the insured aircraft to have the proper ratings as a condition of the policy. Timmons was rated to fly single engine land planes such as the one in which the accident occurred. Timmons also held a third-class medical certificate which was endorsed "student pilot only." In investigating whether the student pilot endorsement on the medical certificate was a breach of the proper ratings clause of the policy, Globe contacted an anonymous source within the Administration rather than seek Timmons' signature on an authorization to in-

spect the Federal Aviation Administration's confidential information. The record reflects a letter which states on its face that the informant must remain confidential. Although a private pilot rating is not usually issued under a Class 3 medical certificate, the letter reflects that the anomaly originated with the F.A.A. and not Timmons. Seven months after Timmons renewed his medical certificate (at the same time upgrading it to a Class 2 certificate) he attempted to rent an aircraft. Timmons was unable to complete the transaction inasmuch as Royal Globe was still contending that there was a problem with his medical certificate.

Failure to cooperate with the insurer was listed as one of the grounds for refusing to cover plaintiff's accident. One of the grounds for this assertion was plaintiff's failure to forward the documents (medical certificates and other records), in spite of the fact that Royal Globe had sent copies to the investigator in Colorado (Mr. Lee).

One of Royal Globe's employees told plaintiff at one point in the negotiations that if Timmons would discharge his attorney they could settle on more favorable terms.

The plaintiff's liability to the passengers, third parties to the insurance contract, has been discharged by Royal Globe Insurance. That judgment was over the limits of the insurance policy. The liability spoken of in earlier cases, such as *American Fidelity & Casualty Co. v. Jones Trucking Co.,* 321 P.2d 685 (Okl.1958), and *National Mutual Casualty Co. v. Britt,* 200 P.2d 407, 203 Okl. 175 (1948), has been satisfied. This action does not emanate directly from this line of authority. Here we consider the liability of the insurer to the insured party for failure to deal fairly and act in good faith with its insured. Such an action was discussed in *Christian v. American Home Assur. Co.,* 577 P.2d 899 (Okl.1977). In approving of such an action this Court stated at 904 and 905:

> We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that violation of this duty gives rise to an

action in tort for which consequential and, in a proper case, punitive, damages may be sought.

This Court discussed its perception of the implied duty to deal fairly with the insured in *Christian, supra,* by citing what was termed the clear analysis found in *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), to the effect that there is a single duty to deal fairly with the insured and third parties arising from the relationship established by the contract of insurance:

> Thus in *Comunale* and *Crisci* we made it clear that '[l]iability is imposed [on the insurer] not for a bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.' In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. *These are merely two different aspects of the same duty....* It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities.... (Emphasis added.)

Thus there is but one duty to deal fairly and in good faith, which is owed by the insurer to both the insured and third parties. The prior action to require the insurer to pay claims of third parties has been reduced to judgment and that judgment has been satisfied. The prior judgment was final before this action was commenced. Defendant Royal Globe Insurance Co. states on appeal, citing *Christian, supra,* that this second action amounts to a prohibited split of a single cause of action into two lawsuits. The petition did not allege any actions of bad faith conduct accruing after the prior judgment and there is no issue made con-

trary to this statement on appeal. Whatever cause of action plaintiff possessed accrued prior to the Federal Court judgment. Reversible error is not demonstrated under this proposition by virtue of the fact that defendant is not shown on appeal to have pled, or otherwise tendered to the trial court, the issue of the bar presented by the former action. Additionally, this point of error is not raised in the petition in error. This jurisdiction is committed to the rule that a defendant may expressly or impliedly consent to the institution of several actions on a single demand, and that such consent will be presumed unless the issue is pled or otherwise presented to the trial court. *Hardwicke-Etter Co. v. City of Durant,* 77 Okl. 202, 187 P. 484 (1920). Additionally, failure to raise the error for appeal by inclusion in the petition in error is fatal to its consideration.

Our determination that the duty of fair dealing extends to both the insured and third parties, and that the duty has been recognized for an extended period in the jurisdiction is fatal to the appellants' contention that *Christian, supra,* should not be applied retroactively to this action. The duty was acknowledged prior to *Christian* in the jurisdiction and had simply not appeared in the published appellate decisions asserted by an insured.

■ Appellants also contend the judgment is reversible by reason of the bar presented by the statute of limitations. However, the plea of the statute of limitations was raised by the appellants by the demurrer's specific reference to the brief in support of it filed contemporaneously. A special demurrer raising the bar of the statute of limitations properly reaches only those cases where the petition discloses on its face statute has barred the action. *White v. Mitchell,* 206 Okl. 151, 241 P.2d 407 (1950). A demurrer does not reach the issue of a bar interposed by the statute of limitations where the bar does not clearly or affirmatively appear on the face of the petition, however. *Murray v. Teape,* 202 Okl. 234, 211 P.2d 1012 (1949). Where such fact does not affirmatively appear the stat-

ute must be pled. *Territory v. Woolsey,* 35 Okl. 545, 130 P. 934 (1913). *Fox v. Ziehme,* 30 Okl. 673, 120 P. 285 (1911). Thus, it appears that the trial court correctly overruled the demurrer inasmuch as the amended petition does not incorporate the initial petition and contains no dates at all on its face. Filing of an amended petition complete in itself, not referring to original petition or prior amendments, is an abandonment of all prior averments not contained in the amended petition. *Scott v. Price,* 123 Okl. 172, 247 P. 103 (1926). Accordingly, no reference can be made to the original pleading abandoned by filing a substituted pleading in determining whether the demurrer to the amended petition should be sustained. *Seekatz v. Brandenburg,* 150 Okl. 53, 300 P. 678 (1931).

■ Appellants contend that defendant Sowards is entitled to have the judgment against him stricken as a matter of law and because of failure to present evidence against him sufficient to support a judgment. Under the precepts announced in *Christian, supra,* it is argued he cannot be held to breach an implied covenant, determined as a matter of law to attach in every insurance contract, in the event (as here) that he is not a party to the contract.

With such an allegation of error we are constrained to agree. In *Christian, supra,* this Court analyzed and quoted at length from *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). Therein this Court termed *Gruenberg, supra,* to be a "clear analysis" of the implied duty of fair dealing and good faith at p. 904. *Gruenberg, supra,* itself specifically examined the liability of an agent for damages for violation of the implied covenant of fair dealing and good faith inuring in a contract of insurance:

"Obviously, the non insurer defendants were not parties to the agreement for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing...."

Later the California Court dealt with this precise issue, *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 620 P.2d 141, 169 Cal.

Rptr. 691 (1979), holding at 620 P.2d p. 149, 169 Cal.Rptr. p. 699:

"Segal and McEachen acted as Mutual's agents. As such they are not parties to the insurance contract and not subject to the implied covenant. Because the only ground for imposing liability on either Segal or McEachen is breach of that promise, the judgments against them as individuals cannot stand."

As this jurisdiction has embraced the implied covenant spoken to in *Gruenberg, supra,* it is clear that the cause will not lie against a stranger to the contract. This is not to say, however, that the acts of the agent may not be material to a determination of the existence of a breach of that duty. Accordingly, we hold the trial court incorrectly denied Soward's demurrer to the amended petition. The error was properly preserved for appellate review, and accordingly, the trial court's ruling on Soward's demurrer to the amended petition is reversed and the demurrer is ordered sustained.

■ The appellants' remaining propositions of error relate to the conduct of the trial, and those errors relate to the sufficiency of the evidence to support the judgment and verdict and the correctness of the law submitted to the jury by way of the instructions. The first instruction pointed to as erroneous by appellants informed the jury of the standard of persuasion to be applied in the determination of whether the plaintiff proved his case. Instruction No. 2 stated in part: "In this case, as in all other civil actions, the burden of proof is upon the plaintiff to make out his case and all material allegations of the petition by a preponderance of the evidence." The appellants contend that it is reversible error to erroneously instruct upon the standard of persuasion and that the instruction thus given is erroneous. Appellants rely upon *Christian, supra,* and the language it contains at p. 905:

"Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably and in bad faith, withholds payment of the claim of its insured."

It is to be noted that this passage does not distinctly hold the standard of persuasion to be given the jury in such a cause is proof of a cause of action beyond a reasonable doubt. Had this Court contemplated a digression from the usual standard in a civil case, the *Christian* opinion would have clearly delineated such a change. Good faith and fair dealing are the measure of the insurer's obligation both in the instance of the claim of an insured and that of third parties. This jurisdiction has substantial case law discussing those aspects relating to claims of third parties. *National Mutual Casualty Co. v. Britt,* 200 P.2d 407, 203 Okl. 175; same 218 P.2d 1039, 203 Okl. 175 (1949); *American Fidelity & Cas. Co. v. L.C. Jones Trucking Co.,* 321 P.2d 685 (Okl.1958); *Boling v. New Amsterdam Cas. Co.,* 173 Okl. 160, 46 P.2d 916 (1935); *Mid-Continent Casualty Co. v. State Insurance Fund,* 398 P.2d 92 (Okl.1964). In these cases and others listed in 8A Okla. Digest Insurance § 514, this Court has not stated that the burden of persuasion deviates in this type of action from the usual preponderance of the evidence standard. This Court now expressly declines to so hold. The trial court did not err in refusing to instruct on the clear and convincing burden offered by defendants.

■ Appellants contend reversible error arises from the giving of two instructions to the jury, stating that an insurance contract must be construed according to the intent of its terms as modified by any rider or endorsement and that in Oklahoma, insurance contracts are construed so that words of exclusion are construed against the insurer and words of inclusion are construed in favor of the insured. The instruction generally sets forth a correct statement of Oklahoma law. *Northwestern Mut. Ins. Co. of Seattle v. Richardson,* 470 P.2d 330 (1970). Appellants conclude the instruction was not material to the cause and its presence was prejudicially confusing because the action does not sound in contract. The instruction is here held to be free of the offered taint. The insurance

company's decision not to defend plaintiff was made on a determination that coverage did not extend to this accident, and was presumably made in the face of the knowledge of applicable Oklahoma law. The reasonableness of that decision must be judged in the light of the applicable law, and the instruction on that law was thus proper in view of the fact that the sole point of error advanced against instructions three and four is that they are outside the issues of the action submitted to the jury.

■ Appellants raise as reversible error the failure to allow their requested instructions relating to the distinction between general and soliciting agent as well as an instruction dealing with the distinction between an agent and independent contractor. The failure to give these instructions is found here not to be error under the facts of this case. The record contains no evidence that the persons acting in behalf of Royal Globe were not in the employ of that entity. There is no issue that any of these persons were strangers to that company. In *Christian, supra,* this Court stated at 577 P.2d 905:

> "Appellee [Insurer] was under a legal duty to act in good faith and deal fairly with appellant in the handling of his claim...."

We have often noted that when a party owes a legal or contractual duty to another he may not escape liability for failure to perform that duty by delegating that responsibility to an independent contractor. *Allied Hotels, Ltd. v. Barden,* 389 P.2d 968 (Okl.1964), *Jack Cooper Transport Co. v. Griffin,* 356 P.2d 748 (Okl.1959), *Shell Pipe Line Corp. v. Curtis,* 287 P.2d 681 (Okl. 1955); *Oklahoma Ry. Co. v. Boyd,* 140 Okl. 45, 282 P. 157 (1929); *Huckins Hotel Co. v. Clampitt,* 101 Okl. 190, 224 P. 945 (1924). Thus, the appellant was not prejudiced by refusal to give the requested instruction because under these facts liability would not be avoided by a finding that the persons employed by Royal Globe were independent contractors.

■ Another point raised as reversible error by appellants deals with failure to

give a requested jury instruction referable to a definition of bad faith. The instruction requested reads:

> "You are instructed that by bad faith it is meant an actual existing evil intent to mislead or deceive and does not include a misstatement made through inadvertence or carelessness."

Appellants contend that the trial court erred in refusing to charge the jury with the above instructions, or alternatively, the trial authority should have given its own instruction defining bad faith, and failure to do so is failure to instruct on a fundamental issue of the case.

Generally it is stated in this jurisdiction that a judgment will not be reversed for refusal to give additional or more detailed instructions requested by the appealing party where that refusal does not appear to have resulted in a miscarriage of justice or a substantial violation of constitutional or statutory rights if the cause was submitted to the jury under proper instructions on fundamental issues. *Knight v. Estes,* 383 P.2d 879 (Okl.1963). Appellants' first portion of this proposition assumes bad faith is a fundamental issue in the type of cause of action discussed in *Christian, supra.* Such a contention is not precisely correct. *Christian, supra,* at 904 states:

> "We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and the violation of this duty gives rise to an action in tort for which consequential, and in a proper case, punitive damages may be sought."

Breach of the implied duty to deal fairly and act in good faith gives rise to the cause of action here considered. The gravamen of a *Christian*-type tort is failure to deal fairly and in good faith. Failure to abide by the implied duty imposes liability. The trial court did not err in refusing the requested instruction because to limit recovery for *Christian*-type actions to "an actual existing evil intent to mislead or deceive" limits recovery substantially beyond that required for proof of failure to deal fairly

and in good faith. Accordingly, the trial judge's refusal to give the requested instruction is not error.

█ The second aspect of this allegation of error relates to the trial court's failure to define good faith. Appellant contends the omission of such an instruction is fundamental error. In Oklahoma, it is the duty of the trial court to instruct the jury on its own motion on the decisive issues raised by the pleadings and evidence. *Binning v. Safeway Stores, Inc.,* 532 P.2d 1198 (Okl.1975); *McGuigan v. Harris,* 440 P.2d 680 (Okl.1968). The trial court instructed generally that recovery by the plaintiff required a determination that the defendants did not deal fairly and in good faith. Appellants contend such an instruction is erroneous without a definition of good faith and fair dealing. However, where the trial court instructs generally on the issues and a party desires a more specific instruction, it becomes a duty on that party to request a more specific instruction. *Binning v. Safeway Stores, supra; Bradley Chevrolet, Inc. v. Goodson,* 450 P.2d 500 (Okl.1969); 12 O.S.1971 § 577 Sub. 5. Appellants have not demonstrated in the record such an instruction defining fair dealing and good faith was requested. Hence no error in the failure to give a more specific instruction is found under the record on appeal.

█ The appellants complain that the trial court improperly instructed the jury that they could find actual damages in a greater sum than pled. This allegation of error is disapproved. Variances between the pleadings and proof of damages were disposed of when the plaintiff requested the trial court to conform the pleadings and the proof. This motion was granted without objection from the appellant. No variance between pleading and proof is material unless it has actually misled to his prejudice. Variance of this nature is covered by 12 O.S.1971 § 311. Therein it is made a statutory requirement that the complaining party must prove the variance misled him to his prejudice "to the satisfaction of the trial court." No attempt was made to comply with the statute.

█ Appellants contend various items of evidence were improperly admitted to consideration by the jury. Representative of these is oral testimony of actual damage in the form of attorneys' fees in the amount of $4,000.00 occasioned by the defendant's refusal to defend the prior law action against plaintiff. The expense was proved by oral testimony. Defendants contend that the cancelled check was the best evidence of the expense and the trial court erred in admitting oral evidence thereof. This action was tried in 1979 and 12 O.S. Supp. 1978 § 3002 was applicable. That statute states:

> "To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required except as otherwise provided in this code or by other statutes."

The precise language of the statute demonstrates the error offered does not obtain. Plaintiff was not attempting to prove the existence of a cancelled check or the contents thereof. Plaintiff was attempting to prove payment of an attorney's fee, a debt the existence of which is collateral to the writing. Failure to admit written evidence of payment may be considered by the jury to lessen the probative value of the proof offered but that failure does not violate the "best evidence rule." See also 29 AmJur 2nd, Evidence § 449. The appellants refer to *Great Western Motor Lines, Inc. v. Cozard,* 417 P.2d 575 (Okl.1966), as authority for their assertion that the check was the only admissible proof of the damage in this instance. That opinion, however, revolves not around the best evidence rule but around the principle that damages, to be recoverable, must be susceptible of ascertainment in some manner other than mere speculation.

Remaining upon the issue of inadequate proof of damages, appellant points to testimony of damage, backed by an exhibit, stating the jury was allowed to find an interest expense damage figure over three thousand dollars above the evidentiary figure. When questioned, the witness referred

to the interest expense for 1973 off of the exhibit neglecting to read the total figure. The documentary exhibit contains a total figure which supports the larger judgment. The jury was entitled to find and allow the expense listed in the exhibit.

■ The appellants contend the trial court erred in ruling on the issue of embarrassment and mental suffering. The jury ultimately awarded $25,000.00 as compensation for that harm under the instructions given to the jury. Insofar as the brief characterizes such award as a result of a cause of action for mental suffering, that allegation is rejected. The requirement that an independent injury be actionable in itself as a predicate for recovering damages for emotional distress has been acknowledged in this jurisdiction. *Mashunkashey v. Mashunkashey*, 189 Okl. 60, 113 P.2d 190 (1941). There this Court offered at p. 191:

"Injury to reputation will support an action for damages; but mental pain and suffering alone will ordinarily constitute but an element of damages. The latter is seldom a sufficient basis upon which to predicate an action. Usually it is compensable only when made an element of damages in an action based upon a wrong which in itself is actionable. (Citations omitted). But mental pain and suffering may constitute the basis of an independent action in cases of wilful wrong of the character where mental suffering is recognized as the ordinary, natural and proximate result of such wrong." (Citations omitted.)

In *Christian*, this Court indicated the type of harm to be anticipated from a failure to deal fairly and in good faith with its insured and it was recognized that the desire of an insured to be free from the distress resulting from the disability or casualty insured against strikes at the very core of the concept of insurance.

"... To some extent this special relationship and duties of the insurer exist in recognition of the fact that the insured does not contract '... to obtain a commercial advantage but to protect [himself] against the risks of accidental losses including the mental distress which might follow from the losses...'"

*Christian, supra,* at 902 quoted from *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 A.L. R.3rd 286 (1970).

■ The appellants also contend there is no evidentiary showing that the conduct of the insurer was as a matter of law outrageous enough to justify an award for mental anguish. This point of error is not persuasive. First, where mental suffering is alleged to be one of the items of damage resulting from an otherwise actionable transgression, recovery of damages for that aggravation does not require either "severe" mental distress or "outrageous" conduct to be actionable, as explained in *Gruenberg v. Aetna Ins.,* 510 P.2d 1032, at 1040, 1041. The determination has been previously made that in this action, the damages sought for mental suffering are but one element of damage sought for failure to deal fairly and in good faith. It is therefore unnecessary to hold the acts of Royal Globe such as falsifying witnesses' statements and intentionally procuring confidential government records qualify as outrageous conduct. Appellants contend recovery for mental suffering has never been allowed in this state in the absence of extremely outrageous conduct. However, the case of *St. Louis-San Francisco Ry. Co. v. Clark,* 104 Okl. 24, 229 P. 779 (1924), allowed an ambulatory First World War victim to recover damages and punitive damages from the rail carrier for an insult not accompanied by physical impact, stating that the excitement and anger caused by the rough insult are sufficient to produce physical injury to a human being "especially to one already broken and suffering from the effects of poisonous gas to the lungs and heart." The outrageous conduct there deemed actionable was a travel delay of 24 hours caused by the company agent's refusal to honor a government travel requisition to a hospital, informing the veteran to: "get the hell out of the depot." *St. Louis, San Francisco Ry. v. Clark, supra,* 229 P. at 780.

■ Appellants propose reversible error by not withdrawing the claim for punitive damages upon presentation by appellants of a motion for partial summary judgment, demurrers to the evidence and motion for summary judgment. Additionally, it is contended the punitive damage instruction was erroneous, and the punitive damage award itself is excessive as a matter of law. This allegation of error is couched in terms of a proposition of law which unwarrantedly narrows the scope of inquiry in an action against an insurer for failure to deal fairly and in good faith with the insured. Appellant contends the only conduct relevant to such an inquiry is that which revolves around the formulation of the reason ultimately given by the insurance company for non-coverage of the policy. The formal reasons given by the insurer for non-coverage were inadequate medical certification and failure to cooperate. Appellants would have the Court to consider relevant only evidence relating to the formulation of those grounds for non-coverage. The cause of action sued upon is not this narrow, however. The essence of the cause before the Court is failure to deal fairly and in good faith with an insured and as such, the jury may be shown the entire course of conduct between the parties to arrive at a determination of whether that standard had been breached or not.

■ The following evidence demonstrates that the trial court correctly determined that malice, and any punitive damages resulting therefrom, were questions for the jury:

Mr. Warren Edman testified that plaintiff was told if he would release his attorney, the insurance company could settle his claim. Quoting from the transcript of the trial at p. 132:

Q. In this letter, he tells you that he no longer represents Mr. John D. Timmons, isn't that a fact?

A. Yes, sir.

Q. Isn't it a fact that the reason this letter came from Mr. Stayner is you told Mr. Timmons if he did get rid of his lawyer, you people could settle his claim, isn't that a fact?

A. Yes, sir.

Evidence was presented to the jury which, although highly controverted, would justify the conclusion that an adjuster falsified a report by inserting the fact that payment was made for the trip by the passengers. This fact alone would have negated coverage under the policy.

The jury was presented with evidence that an investigator had concealed his true identity from plaintiff on several occasions; giving three different occupations and identities to plaintiff. This same individual is the only person that observed the necessary airworthiness certificate on board the aircraft after the crash. The absence of this item from the aircraft is an additional ground for avoiding the policy.

Confidential information was requested by the company and obtained. The evidence bearing on the acquisition of information from the Federal Aviation Agency indicates the insurance company was aware the information was confidential prior to its acquisition and the memorandum detailing the facts gleaned from this source reflects upon its face the actors knew afterwards that confidentiality had to be maintained.

The files of the Royal Globe Insurance Company introduced in the cause demonstrate that from an early date, persons in the employ of the company had noted that the various grounds for refusing coverage would not defeat all claims, specifically those of third parties and the mortgagee.

During the period Mr. Timmons' aviation policy was in force, Royal Globe informed an aircraft rental agency it would not insure Timmons, even to do a touch and go [take off and landing] in the [flight] pattern at Riverside Airport.

Lastly, for the purposes of this evidentiary review, the jury was informed by the prior judgment in Federal Court that the ground for denial of coverage dealing with improper flight credentials was located in a paragraph of the contract which was specifically deleted by a safe pilot endorsement.

Appellants refer the Court to *Cox v. Theus,* 569 P.2d 447 (Okl.1977), wherein this Court made the following observation on punitive damages:

> "Exemplary damages come only with a guilt determination of oppression, fraud or malice, or a form of gross negligence or wantonness. The theory is the punishment of the offender for the general benefit of society. *Oden v. Russell,* 207 Okl. 570, 251 P.2d 184 (1952).[3]" (Footnote omitted.)

The footnote indicated at the end of that passage quotes the Court syllabus of *Oden, supra,* stating:

> "Exemplary damages are imposed by the law on the theory of punishment to the offender, for the general benefit of society, and are allowed only in cases where fraud, oppression, gross negligence or malice, actual or presumed, enter into the cause of action, *but a person may commit such wilful acts in reckless disregard of another's rights that malice will be inferred.*" (Emphasis added.)

We acquiesce in the appellants' selection of *Cox v. Theus, supra,* as pertinent authority on the issue of punitive damages. We differ with appellants, however, on the issue of a *prima facie* case produced by the evidentiary material here summarized. Under the facts here we hold plaintiff submitted evidence which, if believed by the jury, would justify the submission of the issue of punitive damages, holding that the jury was entitled to find actual or presumed fraud, oppression, gross negligence or malice. Under the holding of *Oden v. Russell, supra,* the jury was additionally entitled to infer malice from the summarized evidence on the basis of wilful acts committed in reckless disregard of the plaintiff's rights. We note in passing that nearly every point of the summarized evidence was disputed in one fashion or another at the time of trial, but the sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined in the light of the evidence tending to support the judgment. *Park v. Security Bank & Trust,* 512 P.2d 113 (Okl.1973), *Smith v. Davis,* 430 P.2d 799 (Okl.1967).

■ The appellants additionally complain that the jury instruction regarding malice was erroneous. An alternative was offered by appellants. The offered instruction is not completely adequate, however, and the trial court did not err in refusing that offered instruction under *Oden v. Russell, supra,* in that it does not indicate malice may be inferred from wilful acts committed in reckless disregard of another's rights. If a requested instruction is objectionally in any respect, refusal to so charge the jury with that instruction is not error. *Chicago, R.I. & P. Ry. Co. v. Fontron Loan & Trust Co.,* 89 Okl. 87, 214 P. 172 (1923). In order to predicate reversible error upon failure to give a requested instruction (among other items) it must be shown that the instruction is correct in both form and substance so that the court could charge the jury under the instruction without modification or omission. *Hub-Wyoming Oil Co. v. Watts,* 89 Okl. 133, 214 P. 193 (1923). *Pacific Ins. Co. of New York v. Frank,* 452 P.2d 794 (Okl.1969).

■ The appellants' penultimate allegation of error deals with the size of the punitive damage award. It is submitted that a punitive damage award of three million dollars is excessive as a matter of law and cries out for reversal. Appellant cites *Basden v. Mills,* 472 P.2d 889 (Okl.1979), for the principle that punitive damages must bear some relation to the *cause* and extent of the injuries inflicted. The appellants state the principle in *Basden v. Mills* is:

> "... the courts of Oklahoma will not attempt to assess a ratio between actual and punitive damages but will instead concentrate on the relationship of the *harm to society caused by defendant's* wrongful actions and the size of the punitive damage award." (Emphasis added.)

This Court agrees that the cause of the injuries and the harm done to society by that genre of conduct are very material in determination of a punitive damage award. Constrained as the Court is to review a damage award in the light most favorable to the successful party and in the light of

reasonable inferences to be drawn therefrom, the punitive damage award must stand. Appellants admit it is relevant to perceive the harm to society caused by the conduct establishing liability for punitive damages. Considering that perspective only, we find punitive damages justified for falsifying a sworn statement, surreptitiously obtaining confidential government records, actual deceit by misrepresentation of identity, and a successful attempt to gain advantage over an insured by discouraging legal representation in a legal controversy. These items alone justify substantial punitive damages.[1] Measured by the wealth of the defendant, the amount awarded cannot be said to be legally erroneous considering the economic resources of the defendant, and the premise that a punitive damage verdict is peculiarly within the province of the jury and will not be casually interfered with on the grounds of passion or prejudice. *Oller v. Hicks,* 441 P.2d 356 (Okl.1967), is acknowledged. This jurisdiction has enumerated an additional basis for review of punitive damage verdicts. An example of this additional criteria is illustrated in *Walton v. Bennett,* 376 P.2d 240 (Okl.1976), wherein this Court stated in the Court's second syllabus that the essence of an exemplary damage award is punitive in nature and is proper where the defendant has maliciously or wantonly and wilfully invaded the rights of the plaintiff. Its purpose is to restrain the defendant and to deter others from the commission of similar wrongs. Upon review, such damages will not be held excessive unless it appears they are grossly so, or the result of passion, prejudice, or *improper sympathy.* It is the solemn and considered judgment of this Court that the three million dollars awarded as punitive damages is partially the result of the combined impact of the several wrongful and wilful acts of the defendants and that the combined effect of these items of evidence influenced the jury so as to create an improper sympathetic response of a damage award larger than reason dictates to be necessary to deter such conduct in this defendant and others similarly situated. Thus the award is held not to be properly responsive to the legitimate objective of a punitive damage award, and this Court holds that the size of the punitive damage award requires as a condition of affirming the judgment (deemed here to be excessive) that the plaintiff file a remittitur of one million five hundred thousand dollars.

Lastly, the appellants allege the trial judge's remarks prejudiced the defense. Suffice it to say the entire transcript discloses a closely-argued trial. The judge was no more vehement than necessary to remain in charge of that trial and did nothing more than insure that the conduct of the trial proceeded under his rulings. Neither do we perceive that the judge's remarks placed plaintiff in a favorable light at the expense of the defendant, although comments to both attorneys were at times animated.

The judgment against Royal Globe Insurance Company is in all respects affirmed upon condition that the remittitur in the amount of One Million five Hundred Thousand Dollars is filed in the trial court. Failing plaintiff's electing to file the aforementioned remittitur, the defendant is hereby granted a new trial.

The judgment against the individual defendant, Soward, is reversed.

REVERSED IN PART.

AFFIRMED, ON CONDITION AS STATED, IN PART.

BARNES, V.C.J., and HODGES, LAVENDER, SIMMS, DOOLIN, OPALA and WILSON, JJ., concur.

IRWIN, C.J., concurs in part; dissents in part:

I dissent as to the sufficiency of the remittitur.

---

1. The Court rejects out of hand the contention of the appellant expressed on page 156 of the brief in chief as follows: "In a case such as this, however, society will not be benefited by awarding plaintiff punitive damages because the conduct which will be punished has no outrageous characteristics."