986 F.2d 1428
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jaclyn G. OULDS, an individual, Plaintiff-Appellant,
v.
PRINCIPAL MUTUAL LIFE INSURANCE CO., an Iowa corporation;
and Principal Financial Group, a Delaware
corporation, Defendants-Appellees.
 Nos. 92-6029, 92-6177.
 United States Court of Appeals, Tenth Circuit.
 Feb. 12, 1993.
 
 1
 Before TACHA and BALDOCK, Circuit Judges, and BROWN,* Senior District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 WESLEY E. BROWN, Senior District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 5
 The appeal in case No. 92-6029 involves the propriety of the district court's grant of summary judgment to defendants-appellees Principal Mutual Life Insurance Company and Principal Financial Group (Principal) on plaintiff-appellant Jaclyn G. Oulds' claim of breach of the duty of good faith and fair dealing. In case No. 92-6177 plaintiff appeals the court's denial of her application for attorneys' fees. Because we find no error in the judgments of the district court, we affirm.
 
 
 6
 This case began when Ms. Oulds brought suit against Principal, her health insurance carrier, alleging breach of contract and breach of the duty of good faith and fair dealing in its denial of her claims for medical benefits. The district court, citing the need to avoid potential prejudice to Principal, bifurcated the breach of contract claim from the bad faith tort claim. I Appellant's App., doc. 8 at 4-5. The breach of contract claim was tried to a jury which returned a verdict in favor of plaintiff for approximately $18,000.
 
 
 7
 After trial, Principal filed a motion asking the district court to reconsider its earlier denial of summary judgment on plaintiff's claim of breach of the duty of good faith and fair dealing. Upon reconsideration, the district court determined that, because evidence at trial had established a legitimate factual and legal dispute regarding Principal's liability for benefits, plaintiff could not meet her burden of showing that Principal had " 'unreasonably, and in bad faith, withh[eld] payment of the claim of its insured.' " III Appellant's App., doc. 21 at 11-12 (Order on Defendant's Motion to Reconsider) (quoting Christian v. American Home Assurance Co., 577 P.2d 899, 904-05 (Okla.1977)).
 
 
 8
 Plaintiff's subsequent application for attorneys' fees was submitted to a magistrate judge who recommended that she be denied fees because she had not been the prevailing party under Oklahoma statutory law. Id., doc. 23 at 7-8. In the alternative, the magistrate judge recommended that if the district court were to find that plaintiff had prevailed, the amount of her fees be reduced from $167,937, the amount plaintiff requested, to $107,742. Id. at 6, 12. The district court agreed that plaintiff had not been the prevailing party and thus was not entitled to statutory attorneys' fees. Id., doc. 24 at 2. The court, therefore, affirmed the findings and recommendation of the magistrate judge with regard to her ultimate entitlement to fees and rejected the magistrate's alternative reduction in the amount of those fees as unnecessary.
 
 
 9
 On appeal plaintiff argues that the district court erred in bifurcating her claims, in granting summary judgment to Principal, and in denying her attorneys' fees. We address these issues in the order presented.
 
 Bifurcation
 
 10
 In challenging the district court's bifurcation of her case, plaintiff cites Buzzard v. McDanel, 736 P.2d 157 (Okla.1987), where the Oklahoma Supreme Court issued a writ of prohibition to the district court which had granted an insurer's motion for separate trials on issues similar to those here. The court held that the question of whether the plaintiff could legally recover from a third-party tortfeasor was not a separable and controlling issue in determining whether the insurer had refused to honor its insurance contract in bad faith. Id. at 159. While this authority would be persuasive in an Oklahoma state court, we note that bifurcation of trials is permissible in federal court even when such procedure is contrary to state law. Sellers v. Baisier, 792 F.2d 690, 694 (7th Cir.1986) ("Bifurcated trials are permissible in federal court under Federal Rule of Civil Procedure 42, however, and Rule 42 may be applied in diversity cases even though the state law employed to determine the substantive issues in the case prohibits bifurcated trials."); see also Rosales v. Honda Motor Co., 726 F.2d 259, 262 (5th Cir.1984). Thus, because bifurcation was a permissible option open to the district court, our only review here is to determine whether the court abused its discretion in ordering the separation. Moss v. Associated Transp., Inc., 344 F.2d 23, 25 (6th Cir.1965) (trial judge has discretion with respect to ordering separate trials). Because we see no indication that the district court abused its discretion, we affirm the district court on this issue.
 
 Bad Faith Claim
 
 11
 We review the grant of summary judgment by the district court de novo, applying the same legal standard to the evidence in the record as did the district court. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). In so doing, we determine "whether 'the pleadings ... and admissions, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir.1991) (quoting Fed.R.Civ.P. 56(c)).
 
 
 12
 Every Oklahoma insurance contract contains an implied duty of good faith and fair dealing. See, e.g., Timmons v. Royal Globe Ins. Co., 653 P.2d 907, 914 (Okla.1982). "The insurer does not breach this duty by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.' " Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir.1989) (quoting Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla.1984)). In order to prevail on her claim, plaintiff here had to show by a preponderance of the evidence that Principal "failed to treat [her] fairly or that it tried to make [her] 'surrender [her] policy or disadvantageously settle a nonexistent dispute.' " Id. (quoting Fletcher v. Western Nat'l Life Ins. Co., 10 Cal.App.3d 376, 401 (1970)). Viewing the evidence in the light most favorable to plaintiff, we agree with the district court that the presence of a legitimate dispute regarding omissions and misrepresentations on plaintiff's applications for insurance prevents a finding of bad faith on the part of Principal.
 
 
 13
 Principal argues on appeal, and the district court agreed, that material omissions and misrepresentations in plaintiff's initial application for health insurance formed the basis for denial of coverage, and that the presence of such evidence points to a legitimate dispute, thus precluding a finding of bad faith.
 
 
 14
 In order to determine whether Principal acted in good faith, the district court was required to evaluate its actions "in light of all facts known or knowable concerning the claim at the time plaintiff requested the company to perform its contractual obligation." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1362 (Okla.1989) (citing Buzzard, 736 P.2d at 159). There was evidence before the district court that, at the time plaintiff submitted her first disputed claim, Principal knew, or could have learned, that when plaintiff initially applied for insurance with the company she had, in the previous few months, been diagnosed with either ulcerative colitis or Crohn's disease, had undergone a colonoscopy, had been advised to have another colonoscopy, and had been taking prednisone for the condition. I Appellee's App. at 120. Plaintiff's initial application contained no indication of her existing bowel problems. Id. at 18. Underwriters for Principal testified that if they had known of plaintiff's medical history they would have declined coverage. Id. at 10, 41, 289-90; II Appellee's App. at 433-34.
 
 
 15
 Dennis v. William Penn Life Assurance Co., 714 F.Supp. 1580, 1582 (W.D.Okla.1989).
 
 
 16
 Plaintiff contended that she had informed Principal's agent of her medical history, a fact disputed by the agent. Nevertheless, based on the initial application, plaintiff was enrolled in a planned employee program through her employer for comprehensive medical coverage. When rates for the planned employee program increased approximately a year later, plaintiff elected to remain with Principal but to change policies to a less expensive plan. In her application for the later coverage, plaintiff was asked the following questions:
 
 
 17
 2. Is anyone now getting or thinking about getting medical treatment or taking any medicine, drugs, pills, shots, etc.?
 
 
 18
 3. Has anyone been to or consulted a doctor, chiropractor, or any medical specialist or had blood tests or other medical tests done in the past 5 years?
 
 
 19
 4. Has anyone been hospitalized or been told of a need to have medical tests, have surgery, or to be hospitalized?
 
 
 20
 7. Has anyone ever had gallbladder problems, ulcers, diarrhea, colitis, other digestive problems, hepatitis, cirrhosis, or liver problems?
 
 
 21
 I Appellee's App. at 20. Plaintiff answered "no" to questions 4 and 7. Questions 2 and 3 were answered in the affirmative but the explanations offered indicated that the only treatments needed were for flu, bronchitis, and allergies. Plaintiff signed the application beneath a statement representing that all information was true and complete. To explain this discrepancy, plaintiff stated in her affidavit that the same agent who had processed her initial application had told her that, with the new application, only her medical history during the past year was relevant. I Appellant's App., doc. 6, exh. 1 at 2.
 
 
 22
 Our job in reviewing a grant of summary judgment on a claim of bad faith is not to arrive at a conclusion regarding who said what to whom. Our task, rather, is to determine whether there was evidence of material fact regarding the question of Principal's reasonableness and good faith in denying coverage. We agree with the district court that, because of the omissions and misrepresentations in plaintiff's applications, the evidence here reveals the presence of a legitimate factual dispute regarding liability for benefits which prevents a finding of bad faith on the part of Principal. See Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla.1984).
 
 
 23
 This conclusion is not inconsistent with the jury's determination favoring plaintiff on her contract claim. That verdict does not settle the issue of whether Principal was tortious in its denial of coverage.
 
 
 24
 The fact that plaintiff prevailed [on the contractual insurance claim] does not make defendant's actions bad faith per se. The defendant's actions were reasonable and legitimate. Facts were in dispute as to [plaintiff's eligibility for coverage]. The insurer[ ] had a right to have this dispute settled in a judicial forum. A [bad faith] cause of action will not lie where there is a legitimate dispute.
 
 
 25
 City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins., 804 P.2d 463, 468 (Okla.Ct.App.1990) (quoting Manis, 681 P.2d at 762), cert. denied, (Jan. 23, 1991.)
 
 
 26
 This case is indistinguishable from City National Bank, 804 P.2d 463, in which the trial court had sustained the insurer's demurrer to the plaintiff's evidence of bad faith. In affirming the trial court, the Oklahoma Court of Appeals noted that there, as here,
 
 
 27
 [t]he evidence adduced revealed Insurer's refusal of Appellee's claim on what Insurer believed to be material misrepresentations of fact ... on the application for insurance, constituting grounds, if believed by the jury, for avoidance of liability. Insurer had a right to litigate this legitimate dispute. The fact that the jury returned a verdict against Insurer does not render Insurer in bad faith.
 
 
 28
 Id. at 469.
 
 
 29
 Plaintiff next argues that the arthritic condition which triggered the first claim denied by Principal was completely unrelated to her colon condition and that, indeed, it was later determined that she did not have ulcerative colitis but instead was suffering from Lyme disease. This argument, however, does not undermine the court's conclusion that there was insufficient evidence of Principal's bad faith to raise a material issue of fact. The facts known or knowable by Principal at the time plaintiff first submitted claims for arthritis treatment were that she had been treated for what was then thought to be colitis or Crohn's disease but had not included that information in her medical history. Whether plaintiff's particular claim related to the misrepresented condition is irrelevant to Principal's good faith in denying coverage based on what it perceived were legitimate grounds. This reasoning is supported by Dennis, 714 F.Supp. 1580, in which the district court granted summary judgment to an insurer based on misrepresentations in the insured's application for life insurance. Although the insured died while auto racing, the court listed as material misrepresentations in the application providing grounds for rescission the fact that the insured had denied that his license had been suspended, failed to disclose treatment for depression, and misrepresented the existence of other insurance. Id. at 1582-83. Plaintiff cites no case holding that the misrepresented condition must be the basis for a later claim upon which coverage is denied before such misrepresentation would be material. "A misrepresented fact is material if a reasonable insurance company in determining its course of action would attach importance to the fact misrepresented." Id. at 1583. A misrepresentation, material to the acceptance of the risk, is grounds by itself to justify rescission. Id. at 1582. The district court had before it ample evidence that Principal considered plaintiff's colon condition material.
 
 
 30
 In Timmons, 653 P.2d at 917, the Oklahoma Supreme Court in reviewing a claim of bad faith, stated that "the jury may be shown the entire course of conduct between the parties to arrive at a determination of whether [the good faith] standard had been breached or not." Plaintiff quotes this language to argue that the district court erred in keeping her claim from a jury. Plaintiff, however, points to no specific evidence which the district court omitted from its consideration. As with a jury trial, the plaintiff was free to bring before the court on summary judgment any relevant and admissible evidence she may have had regarding Principal's good faith. Under Oklahoma law, "before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." City Nat'l Bank, 804 P.2d at 468. The essence of the tort is the unreasonableness of the insurer. Conti, 782 P.2d at 1360. "[U]ntil the facts, when construed most favorably against the insurer, have established what might be reasonably perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." City Nat'l Bank, 804 P.2d at 468-69. Because plaintiff's evidence failed to establish what might reasonably be perceived to be tortious conduct, the district court was correct in refusing plaintiff access to a jury.[1]
 
 
 31
 Plaintiff also argues that Principal's reliance on misrepresentations in the first application for insurance when it cancelled a policy based on the second application is evidence of bad faith. We disagree. The entire course of conduct between the parties is relevant in determining whether the duty of good faith has been breached. Timmons, 653 P.2d at 917. Thus, plaintiff's answers to the first application are relevant in considering Principal's reasonableness in denying coverage.
 
 
 32
 Plaintiff finally argues that it was bad faith for Principal to contest liability under the policy where it had failed to comply with Oklahoma law regarding rescission. First, citing Okla.Stat. tit. 36, § 3608, plaintiff argues that Principal failed to attach a copy of plaintiff's application to her policy when issued, thus precluding the admission of the application in evidence. Plaintiff, however, overlooks the fact that subsection C of that statute refers to health policies and requires only that the insurer provide a copy of the application to the insured within thirty days of being requested to do so. There is no evidence that plaintiff requested a copy of her application and/or that Principal failed to provide it in a timely fashion.
 
 
 33
 Second, plaintiff argues that Principal had waived its right to rescind by accepting premiums after it cancelled the policy. Whether Principal's actions with regard to monies remitted to it by plaintiff under the circumstances of this case was a waiver is evidence of a legitimate dispute between the parties, and, as with the general dispute regarding liability on the policy, precludes a finding of bad faith on the part of Principal.
 
 Attorneys' Fees
 
 34
 As mentioned above, the district court denied plaintiff attorneys' fees because she was not the prevailing party in the litigation. We agree with the district court and affirm. "[I]n diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes." King Resources Co. v. Phoenix Resources Co. (In re King Resources Co.), 651 F.2d 1349, 1353 (10th Cir.), cert. denied, 454 U.S. 881 (1981); see also AME, Inc. v. Consolidated Freightways, 783 P.2d 499, 500 (Okla.Ct.App.1989) (holding that federal law does not preempt Oklahoma attorneys' fee statute). Generally, a party cannot recover attorneys' fees unless recovery is provided for in a contract or by statute. City Nat'l Bank & Trust Co. v. Owens, 565 P.2d 4, 7 (Okla.1977). The parties do not dispute that the insurance policy here did not provide for attorneys' fees. Plaintiff, therefore, must rely on statutory authority in order to claim fees.
 
 
 35
 Plaintiff first identifies Okla.Stat. tit. 36, § 3629 as justification for her recovery. That statute provides, in pertinent part:
 
 
 36
 B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party.
 
 
 37
 In this case, Principal offered "to reinstate [plaintiff's] health insurance coverage and to pay all her health-related expenses currently pending from her effective date of coverage...." II Appellee's App. at 467. This offer, however, came later than ninety days after Principal received plaintiff's proof of loss. Plaintiff, therefore, argues that she is thus the prevailing party and entitled to fees. We disagree.
 
 
 38
 In Shinault v. Mid-Century Ins. Co., 654 P.2d 618, 619 (Okla.1982), the Oklahoma Supreme Court held that the failure of an insurer to make an offer of settlement within the ninety-day time frame specified in section 3629 "imposes the loss of any chance for attorney fees on the insurer as a sanction...." Id. Thus, the insurer who fails to make an offer of settlement within ninety days cannot recover its fees from the insured. Shinault does not, however, stand for the proposition that, because the insurer has waived its right to fees, the insured is automatically the prevailing party. An insurer's failure to make an offer within ninety days, while acting to deprive the insurer of a chance to claim fees, does not make it impossible for the insurer to protect itself from a fee claim by the insured. The insurer can defend against potential liability for the insured's attorneys' fees by making an offer of judgment which turns out to be greater than the judgment actually obtained by the insured. Contrary to plaintiff's argument, this rule applies to any offer of settlement made to the insured, not just to those which are made within the ninety-day window. Id. ("The insured ... is the prevailing party when the judgment is more than any settlement offer that was made, or when the insured receives a judgment when the insurer has rejected the claim.") (emphasis added). See also Thompson, 875 F.2d at 1463 (comparing judgment to all written settlement offers); An-Son Corp. v. Holland-America Ins. Co., 767 F.2d 700, 703 (10th Cir.1985) (same). The Shinault court's reference to any settlement offer, and not to those made only during the ninety-day period, defeats plaintiff's argument that Principal's offer is legally ineffective.
 
 
 39
 Having established that Principal's offer was timely for purposes of defeating a claim for fees by its insured, plaintiff now must show that her judgment exceeded Principal's offer, as further required by the statute. Principal argues that the judgment obtained at trial did not exceed Principal's pretrial offer to pay all of her medical expenses and reinstate her coverage. Plaintiff counters that her recovery by way of the judgment exceeds the amount of the settlement offer when attorneys' fees, costs, and interest are added to the judgment.[2] In support of this argument, plaintiff cites Carson v. Specialized Concrete, Inc., 801 P.2d 691, 692-93 (Okla.1990), in which the court, construing a statute similar to section 3629, held that if an offer of settlement includes costs and fees, the trial court must calculate the amount of costs and fees incurred by the plaintiff up to the time of the offer in deciding who has prevailed. Carson, however, is distinguishable from this case because, here, the offer from Principal did not include costs and fees. It was a straight offer to cover all of plaintiff's medical costs to date and to reinstate her coverage, with no mention of plaintiff's costs and fees. Because the settlement offer did not include her costs and fees, they will not now be added to her judgment for purposes of determining prevailing party status. In summary, we hold that under section 3629, Principal's offer was timely, not to entitle it to fees, but to defeat a claim of fees by plaintiff; further, because plaintiff's judgment did not exceed the offer of settlement, she is not the prevailing party and is not entitled to fees under section 3629.
 
 
 40
 As a second source of statutory authority for fees, plaintiff points to Okla.Stat. tit. 36, § 1219, which provides, in part, that "it shall be an unfair trade practice for any insurer to fail to notify a policyholder or assignee of record in writing of the cause for delay in payment of any claim where said claim is not paid within thirty (30) days after receipt of proof of loss." The statute further provides that in litigation based on such a claim, the prevailing party is entitled to reasonable attorneys' fees.
 
 
 41
 Principal does not argue that it complied with this statute, but rather that plaintiff "asserted no such [unfair trade practice] claim." Appellee's Br. at 46. The magistrate judge agreed with this contention, holding that "no claim was alleged for an unfair trade practice nor has the Court given this practice any consideration in pretrial and trial proceedings." III Appellant's App., doc. 23 at 7.
 
 
 42
 Plaintiff argues that the pretrial order refers to section 1219 and that a pretrial order supersedes all the other pleadings. While plaintiff is correct that in her "contentions" section of the pretrial order at subparagraph (e) she does put forth a claim under section 1219, I Appellant's App., doc. 10 at 13-14, there is no evidence in the record on appeal that any claim under this section was ever developed at trial.[3] The only evidence we can identify as having been presented at trial regarding the notice requirements of section 1219 is plaintiff's testimony that, with regard to the disputed claims, Principal "would repeatedly send [her] notices that they needed more information and please be patient." III Appellant's App., doc. 26 at 23.[4] There was no evidence regarding when Principal received plaintiff's proofs of loss. Based on this record plaintiff has failed to meet her burden under the statute to demonstrate that Principal's processing of her claims was an unfair trade practice. She, therefore, was not the prevailing party on this claim because she did not present any evidence to support it.[5]
 
 
 43
 The judgments of the United States District Court for the Western District of Oklahoma in both case No. 92-6029 and case No. 92-6177 are AFFIRMED.
 
 
 44
 Under Oklahoma law, material misrepresentations by an insured in an application for insurance are grounds for rescission of the policy if (1) fraudulent, or (2) material to acceptance of the risk or (3) the insurer in good faith would not have issued the policy if the true facts had been known. 36 O.S. 3609. If any of these conditions is satisfied, the insurer may avoid liability under the policy.
 
 
 
 *
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Plaintiff uses considerable space in her opening brief arguing the applicability of the "directed verdict test" on the facts of this case, referring to a rule developed by the Alabama Supreme Court in National Savings Life Insurance Co. v. Dutton, 419 So.2d 1357 (Ala.1982). This test is not referred to by the district court, and its opinion does not rest on the fact that plaintiff's motion for directed verdict at the close of the evidence in the trial of the contract issue was denied, thus presumably proving that Principal had acted on the basis of a good faith dispute
 
 
 [2]
 Plaintiff does not dispute that the amount of the jury verdict was an amount equal to her incurred costs and did not include the reinstatement of her coverage, as did Principal's offer
 
 
 [3]
 The copy of the pretrial order included in volume I of plaintiff's appendix is missing page 10
 
 
 [4]
 The record does contain a copy of plaintiff's affidavit in which she avers that she never received responses from Principal by certified mail to her claims. I Appellant's App., doc. 6, exh. 1 at 1. There is no indication, however, that this affidavit was introduced at trial
 
 
 [5]
 Plaintiff's motion for costs on appeal is DENIED